(No. 61691.—■
(No. 61749.—■

FRANCES E. KEMNER *et al.*, Appellees, v. MON-
SANTO COMPANY, Appellant.

*Opinion filed April 18, 1986.—Rehearing
denied June 2, 1986.*

GOLDENHERSH, J., took no part.

CLARK, C.J., concurring.

Kenneth R. Heineman and Bruce D. Ryder, of Coburn, Croft & Putzell, of Belleville, and James C. Craven, P.C, of Springfield, for appellant.

Rex Car and Jerome W. Seigfreid, of Belleville, for appellees.

JUSTICE RYAN delivered the opinion of the court:

This case involves 22 consolidated actions brought against various defendants to recover damages for alleged injuries and property damage purportedly caused by exposure to chemicals released as a result of a railroad–tank-car derailment in Sturgeon, Missouri. We have consolidated these cases for review; they are before us on interlocutory appeals from the circuit court of St. Clair County. In cause No. 61691, the circuit court denied defendant Monsanto Company's (Monsanto) motion to reconsider prior orders denying its motions to dismiss on the grounds of *forum non conveniens*. Pursuant to Rule 306 (94 Ill. 2d R. 306(a)(1)(ii)), Monsanto filed a petition for interlocutory appeal from this order. The petition was dismissed by the appellate court for lack of jurisdiction. We granted Monsanto's petition for leave to appeal (94 Ill. 2d R. 315(a)). In cause No. 61749, the circuit court entered an order prohibiting Monsanto from communicating with the media concerning this case dur-

ing the progress of the trial. The appellate court affirmed, with one justice dissenting (133 Ill. App. 3d 597), and we allowed Monsanto's petition for leave to appeal (94 Ill. 2d R. 315(a)).

We first set forth the facts in cause No. 61691. On January 10, 1979, a railroad tank car being transported by the Norfolk and Western Railway Company derailed and ruptured near the western city limits of Sturgeon, Missouri. The tank car contained a cargo of a liquid chemical substance described as orthochlorophenol crude. The liquid chemical, which was allegedly contaminated by dioxin, leaked from the tank car at the site of the derailment.

On June 5, 1979, an action was filed in the circuit court of Boone County, Missouri, seeking redress for personal injuries and property damage allegedly arising from exposure to the chemical cargo. Named as defendants were the Norfolk and Western Railway Company (N&W), the operator of the freight train involved, under a negligence theory; G.A.T.X. Corporation and General American Transportation Corporation, the manufacturer of the derailed tank car, under a products liability theory; Dresser Industries (Dresser), the manufacturer of the coupling mechanism that snapped which allegedly caused the derailment, under a products liability theory; and Monsanto Company (Monsanto), the manufacturer of the chemical, under negligence, wilful and wanton misconduct, and products liability theories. On or about that same date, 21 similar complaints were also filed in Boone County, Missouri, representing 65 persons residing and/or owning property at and near Sturgeon, Missouri.

On October 29, 1980, the original action in Boone County, Missouri, was voluntarily dismissed without prejudice and refiled in the circuit court of St. Clair County, Illinois. The 21 other actions pending in Boone County were also voluntarily dismissed without prejudice by the respective plaintiffs for the purpose of filing identical complaints

in St. Clair County. Within the time for answering these complaints, Dresser, N&W, and Monsanto each filed motions to dismiss on the grounds of *forum non conveniens*. Monsanto's motion was accompanied by verified suggestions which alleged that all persons then identified either as witnesses or persons with knowledge of relevant facts resided in Missouri, and thus were not amenable to compulsory process in the event of a trial in Illinois. Monsanto also alleged that a more convenient forum was available, as demonstrated by the fact that these cases originally had been filed in Boone County, Missouri. Monsanto further alleged that given the great number of lawsuits filed in St. Clair County, trial in that county would further contribute to the congestion of the court's docket, as well as result in undue delay.

Plaintiffs filed objections to Monsanto's motion, primarily contending that Monsanto's alleged negligent acts and the manufacture of the allegedly toxic chemical which spilled at Sturgeon occurred at Monsanto's plant in Sauget, Illinois, located in St. Clair County. Plaintiffs further alleged that the only issue of liability in this case "turn[ed] around knowledge of these various defendants located in the State of Illinois and must be proven, or disproven, by witnesses, the names of whom are not known at this time, *** who are employed and/or reside in the State of Illinois." Plaintiffs filed additional objections, and Monsanto in turn filed affidavits denying that the alleged connections between plaintiffs' allegations against Monsanto and Monsanto's St. Clair County chemical plant existed.

On May 29, 1981, the circuit court denied the forum motions. As no provision existed in 1981 for appeal to the appellate court from an interlocutory order denying a motion to dismiss on the grounds of *forum non conveniens,* Monsanto filed a motion for leave to petition for writ of *mandamus* in this court. The motion for leave was denied on September 3, 1981.

On September 13, 1982, Monsanto filed a second motion seeking dismissal on the basis of *forum non conveniens*. The motion was supported by verified suggestions, affidavits, and a memorandum of law. Monsanto alleged that, in light of additional discovery which had occurred, no nonparty witness identified by plaintiffs was subject to compulsory process in Illinois. Monsanto also offered statistical evidence prepared by the Administrative Office of the Illinois Courts demonstrating the substantial burden that the pendency and trial of these cases would place on the St. Clair County court system. Finally, Monsanto urged the court to reexamine its earlier order in light of this court's then recent decision of *Espinosa v. Norfolk & Western Ry. Co.* (1981), 86 Ill. 2d 111, which, Monsanto alleged, had changed and clarified the law regarding the dismissal of motions on the grounds of *forum non conveniens*.

Plaintiffs filed objections to Monsanto's second motion on the basis that the motion set forth no newly discovered facts justifying a reconsideration of the circuit court's order. Plaintiffs also offered their own statistical evidence indicating the slight burden these cases placed on the St. Clair County judicial system. On April 29, 1983, the circuit court denied Monsanto's motion. The court adopted its prior order of May 29, 1981. The court also found that *Espinosa* was distinguishable because it involved an action occurring in Michigan which had no connection with Illinois.

Subsequent to the disposition of Monsanto's first forum motion, this court amended Rule 306 to permit the filing of a petition for leave to appeal from the denial of a forum motion. (94 Ill. 2d R. 306(a)(1)(ii).) Pursuant to the amended rule, Monsanto filed a timely petition for leave to appeal to the appellate court from the April 29, 1983, order. The petition was denied, and Monsanto thereafter filed a timely petition for leave to appeal in

this court pursuant to our Rule 315 (94 Ill. 2d R. 315(a)). This petition was also denied.

On September 28, 1984, Monsanto filed in the circuit court a motion to reconsider the April 29, 1983, order denying its second motion to dismiss. Monsanto maintained that since the April 29, 1983, order, this court had issued three opinions dismissing cases under the doctrine of *forum non conveniens*. (See *Foster v. Chicago & North Western Transportation Co.* (1984), 102 Ill. 2d 378; *Moore v. Chicago & North Western Transportation Co.* (1983), 99 Ill. 2d 73; *Wieser v. Missouri Pacific R.R. Co.* (1983), 98 Ill. 2d 359.) Monsanto further submitted that two other cases which arose out of the same occurrence as the present case were also dispositive of the forum issue. (See *Lowe v. Norfolk & Western Ry Co.* (1984), 124 Ill. App. 3d 80; *Clark v. Monsanto Co.* (Sept. 11, 1984), No. 59738 (motion allowed, on stipulation, to remand case to circuit court of Madison County).) Monsanto also asserted that its motion to reconsider contained additional information which was not available at the time its second motion to dismiss was filed. The motion listed 108 Missouri physicians from whom medical records had been obtained and whose testimony allegedly would demonstrate that plaintiffs' complaints were not related to their alleged chemical exposure. It also listed 43 Missouri residents with knowledge concerning plaintiffs' allegations who had been deposed. On December 13, 1984, the circuit court denied Monsanto's motion, adopting its prior orders of May 29, 1981, and April 29, 1983. The court also found the cases cited by Monsanto to be distinguishable from the present case.

On January 14, 1985, Monsanto filed its petition for leave to appeal from the circuit court's December 13, 1984, order. The appellate court dismissed this appeal on the ground that it lacked jurisdiction. Monsanto petitioned this court for leave to appeal from the appellate court, and we granted its petition. Pursuant to plaintiffs' motion, we are

limiting our review in cause No. 61691 solely to the propriety of the appellate court's dismissal of Monsanto's appeal for lack of jurisdiction.

We now turn to the facts in cause No. 61749. On April 29, 1983, the circuit court granted plaintiffs' motion to consolidate for discovery and trial the 22 identical cases which were filed in St. Clair County. The trial of these consolidated actions began February 6, 1984. On March 1, 1984, the National Institute of Occupational Safety and Health (NIOSH) held a news conference in St. Louis, Missouri. At that time, NIOSH officials announced that a former employee of a St. Louis trucking company had developed a rare form of cancer "possibly" linked to dioxin exposure. The institute's doctors learned of the trucker's ailment while conducting a health screening of 200 truckers who worked at three St. Louis truck terminals where dioxin laced oil was sprayed in the early 1970's.

The NIOSH news conference received extensive local media coverage. This single incident of cancer was viewed in some media accounts as Missouri's first verified illness caused by dioxin. The NIOSH report, however, indicated that it was not possible to determine whether the employee's cancer was the type linked to dioxin exposure. Thus, on March 15, 1984, Monsanto sent a letter entitled "Background Information for St. Louis Area News Media" to 14 media organizations in and around St. Louis. The letter was drafted by Daniel R. Bishop, director of environmental communications for Monsanto. After setting forth Monsanto's position that a number of flaws and inaccuracies existed in the NIOSH report, the letter concluded:

> "Why is Monsanto concerned? We make no secret of the fact that we have a vested interest in seeing that news coverage of dioxin-related matters is balanced, straightforward and above all, accurate. We have no involvement in the truck terminal issue per se. But we are currently a

defendant in a lawsuit in St. Clair County, Illinois, in which several residents of Sturgeon, Mo., claim they are suffering or will in the future suffer health problems from alleged exposure to dioxin stemming from a 1979 train derailment and chemical spill.

The jury, which is presently hearing this case, is *not* sequestered, i.e., they are free to view and listen to local news reports. Obviously we're concerned that the jurors may have heard or read some of the exaggerated NIOSH pronouncements stemming from the March 1 news conference. In closing, we want to make it clear that we are not interested in keeping this 'non-story' alive by discussing it publicly. We merely hope that by calling your attention to the basic facts that relate specifically to the March 1 NIOSH announcement, we can sensitize you to the need to be careful, responsible and accurate in the way dioxin subjects are reported in the future."

On March 17, 1984, the *Belleville News Democrat* carried a story entitled "Monsanto Takes Aim at Government Report." The newspaper story discussed the NIOSH news conference, Monsanto's background information, and the present litigation. The story repeated Monsanto's statement that it had a vested interest in balanced, straightforward, and accurate media coverage of dioxin-related matters. The story also expressed Monsanto's concern that the press reports would hurt its standing in the St. Clair County lawsuit, since the jurors may have heard or read "some of the exaggerated NIOSH pronouncements."

On March 19, 1984, plaintiffs filed a motion seeking to hold Monsanto in contempt for attempting to influence the outcome of the trial by communicating with the jurors outside the courtroom. The plaintiffs also prayed that Monsanto be ordered to refrain from issuing any type of press release related to the subject matter of the trial during the time the case was being tried. After hearing arguments by counsel in chambers, the circuit

court issued a 10-day temporary restraining order prohibiting Monsanto and its attorneys from making any statements directed to the media which directly or indirectly mentioned the existence of the present litigation. The court then granted the parties leave to file briefs on the issues raised in the motion and scheduled a hearing for March 29, 1984, to determine whether a preliminary injunction should issue.

Monsanto filed a memorandum of law in opposition to plaintiffs' motion, attaching in support the affidavit of Daniel R. Bishop. In that affidavit, Bishop stated that the letter was not intended to be published in story form as a press release or that the statements be communicated to any juror in St. Clair County. Rather, Bishop stated that the purpose of the letter was to educate and to sensitize the media to the need for future balanced reporting on issues involving dioxin. Bishop further stated that he had set out Monsanto's vested interest in insuring that dioxin news was reported accurately so as not to "taint our credibility with the press." In addition, Monsanto's memorandum submitted that the prohibition against issuing any type of press release constituted an unconstitutional prior restraint of free speech in violation of the first and fourteenth amendments of the United States Constitution.

At the March 29 hearing, plaintiffs argued that Monsanto's "press releases" were part of an attempt to influence the outcome of the trial by manipulating the local media so that news reports thereafter would be more favorable to Monsanto than they would have been had Monsanto not issued the release. Monsanto's counsel countered by stressing to the court that "I can assure you that we have no intention of mentioning this litigation and to the extent that it is mentioned in this particular—these exhibits that are attached to our memoranda, I can assure you that that will not occur again." At the close of the hearing, the court, on its own motion, ex-

tended the temporary restraining order to April 1, 1984.

On April 2, the circuit court issued its order. The court recognized that Monsanto was a logical participant in a nationwide debate on dioxin as well as a defendant in the instant case. The court further recognized that Monsanto had a right to participate in the debate on dioxin, but stated that this right did "not extend to actions calculated to or reasonably foreseeable to influence jurors on [the] case in progress." Concluding that Monsanto's reference to this lawsuit and its jurors constituted a serious and imminent threat to the administration of justice and the integrity of that progress, the court issued the following order:

"1. Defendant Monsanto Company shall not in any press release, background statement, interview, publication or any other contact with the media, by any agent, servant, employee, attorney or independent contractor, mention this case or intimate its existence or its trial or any particular facts or circumstances or positions of parties concerning it until judgment is entered by this Court. The term 'media' includes local, national and multi-national, print and electronic.

2. Defendant Monsanto Company is prohibited from taking any action outside this courtroom that is calculated to or is reasonably foreseeable to influence any juror in this cause.

3. Monsanto Company is in no way prohibited from engaging in the current national debate on dioxin apart from the specific restrictions attributable to the integrity of the administration of justice in this case."

Pursuant to Supreme Court Rule 307 (94 Ill. 2d R. 307(a)(1)), Monsanto filed its notice of appeal from the circuit court's April 2, 1984, order. As noted above, the appellate court affirmed that order with one justice dissenting. 133 Ill. App. 3d 597.

We first consider the propriety of the appellate court's dismissal for lack of jurisdiction of Monsanto's

appeal from the December 13, 1984, order denying its motion to reconsider. Supreme Court Rule 306 governs interlocutory appeals from orders of the circuit court granting or denying certain motions. Following its recent amendment, Rule 306 provides in relevant part:

> "An appeal may be taken in the following cases only on the allowance by the Appellate Court of a petition for leave to appeal:
>
> \*\*\*
>
> (ii) from an order of the circuit court denying a motion to dismiss on the grounds of *forum non conveniens* \*\*\*." (94 Ill. 2d R. 306(a)(1)(ii).)

Under Rule 306, a petition for leave to appeal "shall be duplicated, served, and filed in the Appellate Court in accordance with the requirements for briefs *within 30 days after the entry of the order.*" (Emphasis added.) (94 Ill. 2d R. 306(a)(1).) The time limit for filing the petition for leave to appeal is therefore jurisdictional. See Ill. Ann. Stat., ch. 110A, par. 306, Historical and Practice Notes, at 245 (Smith-Hurd 1985).

In dismissing Monsanto's appeal for lack of jurisdiction, the appellate court concluded that the petition for leave to appeal was untimely. It considered Monsanto's third forum motion in connection with the second forum order filed April 29, 1983. The appellate court relied on the fact that the petition was filed more than 30 days after the entry of the April 29, 1983, order denying Monsanto's second motion to dismiss and held that the latest petition for leave to appeal was untimely. Citing *Leet v. Louisville & Nashville R.R. Co.* (1985), 131 Ill. App. 3d 763, the appellate court reasoned that the 30-day period within which to file a petition for leave to appeal from an order denying a motion to dismiss on *forum non conveniens* grounds may not be *tolled* by filing a motion to reconsider the order denying the motion to dismiss.

In *Leet,* the plaintiff brought an action in the circuit

court of Madison County for damages against the Louisville & Nashville Railroad Company under the Federal Employers' Liability Act for injuries allegedly received while working as a switchman near Louisville, Kentucky. The defendant railroad's motion to decline jurisdiction on the grounds of *forum non conveniens* was denied by the circuit court. Approximately 10 months later, the railroad moved to reconsider the denial of its forum motion. This motion was denied, and the railroad thereafter filed a petition for leave to appeal to the appellate court pursuant to Rule 306. In reaching its conclusion to dismiss the railroad's appeal for lack of jurisdiction, the appellate court in *Leet* first examined the time constraints in Supreme Court Rules 306 and 307. The court took notice of the fact that there was no provision in either rule for extending the time for filing the notice of appeal other than by permission of the reviewing court. The court went on to state that it was not aware of any authority which would allow a motion directed against an interlocutory order to toll the running of the 30-day deadline. Because the railroad's petition for leave to appeal was not filed within 30 days of the circuit court's original order denying the railroad's forum motion, the *Leet* court dismissed the appeal for lack of jurisdiction.

It is Monsanto's position that the appellate court erred in relying on *Leet*. Monsanto stresses that it is not contending that its September 28, 1984, motion to reconsider extended the 30-day jurisdictional period in which to appeal from an order denying a motion to dismiss on the grounds of *forum non conveniens*. Monsanto makes no claim that its motion to reconsider was filed within 30 days of the order denying its first motion to dismiss or within 30 days of the order denying its second motion to dismiss. Rather, Monsanto contends that its September 28, 1984, motion to reconsider presented new factual information and new authorities which were unavailable at

the time of its prior motions. Therefore, the September 28, 1984, motion was in the nature of a new original motion to dismiss. Because its petition for leave to appeal related only to the December 13, 1984, order denying its motion to reconsider, rather than the April 29, 1983, order denying its second motion to dismiss, Monsanto asserts that the appellate court had jurisdiction over its petition, timely filed after the December 13, 1984, order.

We agree with Monsanto that the *Leet* decision is not dispositive of this appeal. The issue of *tolling* the 30-day jurisdictional period is not presented by the facts of this case. Accordingly, we believe the appellate court erred in dismissing Monsanto's appeal for lack of jurisdiction.

The chronological development of this litigation supports Monsanto's contention that the raising of new matters in its September 28, 1984, motion placed that motion in the same status as its second forum motion which the appellate court concluded was timely filed. We noted above the following sequence of events. The original complaint was filed in St. Clair County in October of .1980. Within the time for responsive pleadings, Monsanto moved to dismiss on the grounds of *forum non conveniens*. On May 29, 1981, the circuit court denied that motion. Because there was no provision at that time for interlocutory appeal under Rule 306, Monsanto sought review by *mandamus,* which this court denied. On September 13, 1982, Monsanto filed a second motion seeking dismissal on the basis of *forum non conveniens*. This motion, which alleged factual changes, was denied on April 29, 1983. Rule 306, permitting the filing of a petition for leave to appeal in forum matters, had been amended since the filing of the first forum motion. Pursuant to Rule 306, a timely petition for leave to appeal was filed in the appellate court. Upon its denial, Monsanto sought leave to appeal to this court. That petition was also denied. On September 28, 1984, Monsanto filed a motion to reconsider the circuit court's prior

orders denying its motions to dismiss for *forum non conveniens.* This motion alleged new information and cited new authorities decided since the denial of the second motion. The circuit court denied that motion on December 13, 1984. Within the required 30 days, Monsanto, pursuant to Rule 306, sought leave to appeal to the appellate court from the December 13, 1984, order, not the April 29, 1983, order as stated by the appellate court. The September 28, 1984, forum motion was not an attempt to extend the appeal period from the April 29, 1983, order. A petition for leave to appeal had already been filed and denied as to that order. The fact that a circuit court ruling was obtained and a timely appeal sought as to each motion leads us to conclude that each motion was in substance a new original motion seeking dismissal on the basis of *forum non conveniens.* Accordingly, all three orders denying Monsanto's motion to dismiss on *forum non conveniens* grounds were each interlocutory in nature and therefore the last two orders were independently appealable under our present Rule 306. The fact that the third forum motion (September 28, 1984) was captioned a "motion to reconsider" is not controlling. In fact the second forum motion (September 13, 1982), which was considered on its own merits, asked the court to reconsider its previous ruling in the first forum motion. The character of a pleading is to be determined more from its content than from its label. *Sobczak v. Whitten* (1979), 75 Ill. App. 3d 208, 213; *Farley v. Blackwood* (1978), 56 Ill. App. 3d 1040, 1047; *Eden v. Eden* (1975), 34 Ill. App. 3d 382, 386.

Plaintiffs argue, however, that even if new matter alleged in a second or third motion seeking dismissal on the basis of *forum non conveniens* is sufficient to grant a defendant the right to file a new petition for leave to appeal under Rule 306, the appellate court's dismissal of Monsanto's petition should, nevertheless, be affirmed since new matter is not alleged. Plaintiffs assert that the

factual allegations of Monsanto's three motions demonstrate that no new facts were raised. The plaintiffs further assert that the doctrine of *forum non conveniens* was in no way changed by the *Wieser, Foster, Moore,* and *Lowe* forum decisions.

Plaintiffs' contention that this new matter does not justify reversal of the circuit court's prior forum orders fails to support the appellate court's dismissal for lack of jurisdiction. Plaintiffs' arguments as to the new matters presented in Monsanto's September 28, 1984, motion to reconsider address only the merits of Monsanto's petition for leave to appeal, not the propriety of the appellate court's dismissal of the appeal for lack of jurisdiction. It may be that the appellate court on remand will deny Monsanto's petition for leave to appeal on the basis that the allegedly new factual information and additional authorities are not sufficient to reverse the circuit court's prior forum rulings. However, that fact does not justify the appellate court's dismissal for lack of jurisdiction. Because Monsanto's petition for leave to appeal from the December 13, 1984, order was filed within the requisite 30-day period, the appellate court properly had jurisdiction to consider Monsanto's appeal.

The plaintiffs next argue that Monsanto lost the right to renew its *forum non conveniens* motion after the circuit court had decided the issue. We disagree. An interlocutory order may be reviewed, modified, or vacated at any time before final judgment. *Towns v. Yellow Cab Co.* (1978), 73 Ill. 2d 113, 120-21; *Richichi v. City of Chicago* (1964), 49 Ill. App. 2d 320, 325.

We also reject plaintiffs' argument that since the appellate court and this court denied Monsanto's petition for leave to appeal from the April 29, 1983, order denying its second motion to dismiss, the doctrine of *res judicata* bars relitigation of the forum issue. The *res judicata* effect for which the plaintiffs here argue was

explicitly rejected in *Lowe v. Norfolk & Western Ry. Co.*
(1984), 124 Ill. App. 3d 80, a case which arose out of the
same occurrence as the present case. In *Lowe*, the
defendant railroad filed a petition for *mandamus* and a
petition for leave to appeal to this court concerning the
*forum non conveniens* rulings of the circuit court. Plain-
tiffs argued that since both petitions were denied by this
court, the *forum non conveniens* issue was foreclosed.
The *Lowe* court disagreed, reasoning that "the denial of
a petition for an extraordinary writ, or the denial of a
petition for interlocutory review, means only that a ma-
jority of the upper court could not be mustered in favor
of the petition. It is not an exotic form of *res judicata*."
(124 Ill. App. 3d 80, 90.) We agree with the reasoning of
the appellate court in *Lowe* and conclude that Monsanto
had a right to file a petition for leave to appeal from the
December 13, 1984, order denying its motion to recon-
sider.

The plaintiffs further maintain that Rule 306 was not
designed to provide for continuous, multiple interlocu-
tory appeals from orders denying motions to dismiss on
the basis of *forum non conveniens*. Plaintiffs also assert
that a litigant should not be confronted during trial with
a petition for leave to appeal from an order denying a
forum motion. Plaintiffs therefore suggest that if Rule
306 is to have any effect, then a defendant should not be
permitted to resubmit the forum issue to the appellate
court once that court and this court have denied leave to
appeal from the denial of an earlier forum motion.

The plaintiffs' suggestion would place the defendant
here in the position of having had to make the choice as
to filing a *forum non conveniens* motion when the basis
therefor may not have been clear or deferring filing at
the risk of having the motion denied because of delay. In
*Bell v. Louisville & Nashville R.R. Co.* (1985), 106 Ill.
2d 135, 146-47, we held that a defendant's delay in ask-

ing the circuit court to decline jurisdiction on the grounds of *forum non conveniens* is a factor in considering the motion and in determining whether the circuit court has abused its discretion. Thus, under *Bell,* the defendant would have risked waiving his right to invoke the doctrine of *forum non conveniens* if he failed to move timely. However, under plaintiffs' theory, defendant would have been barred from again raising the forum question should further events have disclosed a sound basis for such a motion. We decline to place the defendant in such an inequitable situation, particularly where additional information is developed through discovery or where subsequent decisions are reported which may demonstrate the validity of the defendant's position on the renewed motion.

We should note that this court has adopted Rule 187 (107 Ill. 2d R. 187), effective August 1, 1986, which requires that *forum non conveniens* motions after that date be filed not later than 90 days after the last day allowed for the filing of that party's answer. The rule also requires that hearings on such motions be scheduled so as to allow sufficient time to conduct discovery on issues of fact raised by such motion.

For the above reasons, the order of the appellate court dismissing Monsanto's appeal for lack of jurisdiction is reversed and the cause is remanded to the appellate court with directions to consider the merits of the petition for leave to appeal.

We next consider the constitutionality of the circuit court's April 2, 1984, order prohibiting Monsanto from communicating with the media concerning this case. Monsanto characterizes the order issued by the circuit court as a "gag" order and a "prior restraint" that infringes on its right of free speech.

It has been said that a prior restraint is "a predetermined judicial prohibition restraining specified expres-

sion." (*Chicago Council of Lawyers v. Bauer* (7th Cir. 1975), 522 F.2d 242, 248.) A prior restraint on speech and publication is "the most serious and the least tolerable infringement on First Amendment rights." (*Nebraska Press Association v. Stuart* (1976), 427 U.S. 539, 559, 49 L. Ed. 2d 683, 697, 96 S. Ct. 2791, 2803.) While not unconstitutional *per se*, any prior restraint on expression bears a *heavy presumption against its validity*. *Organization for a Better Austin v. Keefe* (1971), 402 U.S. 415, 419, 29 L. Ed. 2d 1, 5, 91 S. Ct. 1575, 1578; *Bantam Books, Inc. v. Sullivan* (1963), 372 U.S. 58, 70, 9 L. Ed. 2d 584, 593, 83 S. Ct. 631, 639.

To withstand constitutional scrutiny, the circuit court's restrictive order must fit within one of the narrowly defined exceptions to the prohibition against prior restraints. (*Southeastern Promotions, Ltd. v. Conrad* (1975), 420 U.S. 546, 559, 43 L. Ed. 2d 448, 459, 95 S. Ct. 1239, 1247.) Several courts have recognized an exception where disclosure of information concerning pending litigation by the parties or their counsel would present a clear and present danger *or* a reasonable likelihood of a serious and imminent threat to the litigants' right to a fair trial. (See, *e.g.*, *Hirschkop v. Snead* (4th Cir. 1979), 594 F.2d 356; *Chicago Council of Lawyers v. Bauer* (7th Cir. 1975), 522 F.2d 242, 251; *CBS, Inc. v. Young* (6th Cir. 1975), 522 F.2d 234, 239; *Chase v. Robson* (7th Cir. 1970), 435 F.2d 1059, 1061; *United States v. Tijerina* (10th Cir. 1969), 412 F.2d 661, 666; *Ruggieri v. Johns-Manville Products Corp.* (D.R.I. 1980), 503 F. Supp. 1036, 1040; *United States v. Marcano Garcia* (D.P.R. 1978), 456 F. Supp. 1354, 1357-58; *Cooper v. Rockford Newspapers, Inc.* (1975), 34 Ill. App. 3d 645, 650-51.) While some courts have applied the "reasonable likelihood" test, others have rejected that test as being too broad and have, instead, applied the more narrow and restrictive test of a "serious and imminent threat" of interference with the fair administration of justice. *Chicago*

244

*Council of Lawyers v. Bauer* (7th Cir. 1975), 522 F.2d 242, 249; see Note, *Attorney "Gag" Rules: Reconciling the First Amendment and the Right to a Fair Trial,* 1976 U. Ill. L.F. 763, 778.

The instant case presents a potential conflict between the first amendment right of free speech and the right to a fair trial guaranteed by the due process clause of the fourteenth amendment. In order to achieve the delicate balance between the desirability of free discussion and the necessity for fair adjudication, free from interruption of its processes, we believe that a trial court can restrain parties and their attorneys from making extrajudicial comments about a pending civil trial *only* if the record contains sufficient specific findings by the trial court establishing that the parties' and their attorneys' conduct poses a *clear and present danger or a serious and imminent threat to the fairness and integrity of the trial.* (See, *e.g., Chicago Council of Lawyers v. Bauer* (7th Cir. 1975), 522 F.2d 242, 251; *Chase v. Robson* (7th Cir. 1970), 435 F.2d 1059, 1061; *Ruggieri v. Johns-Manville Products Corp.* (D.R.I. 1980), 503 F. Supp. 1036, 1040; see also 87 Ill. 2d R. 7—107(a); Note, *Attorney "Gag" Rules: Reconciling the First Amendment and the Right to a Fair Trial,* 1976 U. Ill. L.F. 763, 778.) Further, any restraining order which denies parties and counsel their first amendment rights in the interest of a fair trial must be neither vague nor overbroad. *CBS, Inc. v. Young* (6th Cir. 1975), 522 F.2d 234, 239; *Chase v. Robson* (7th Cir. 1970), 435 F.2d 1059, 1061.

In reaching its conclusion that the record supported the circuit court's finding of a "serious and imminent threat to the administration of justice," the appellate court relied on the fact that Monsanto specifically referred to the present case as its rationale for providing information to the press and that Monsanto further stated its vested interest in seeing that jurors in *this* case not be given a one-sided or unbalanced view of the effects of dioxin. Because this was

one of the issues involved in the plaintiffs' case, the appellate court reasoned that Monsanto's communication to the media represented an attempt to shape the jury's opinion, and ultimately its verdict, by means other than the presentation of evidence at trial. (133 Ill. App. 3d 597, 603.) The appellate court thus agreed with the trial court's assessment that actual prejudice need not have occurred before entry of the instant order, since the order was justified as a cautionary measure to preclude further efforts by Monsanto to attempt to affect the outcome of this trial while participating in the public debate on dioxin. 133 Ill. App. 3d 597, 604.

We find no substantial evidence to justify the circuit court's conclusion that a "serious and imminent threat to the fair administration of justice" existed because of Monsanto's communication with the media regarding the present case. Plaintiffs have not alleged that any jurors saw or were influenced by the March 19 *Belleville News Democrat* story. Nonetheless, the circuit court reasoned that "no one requires this Court to be blind to possibilities." (133 Ill. App. 3d 597, 601.) A finding of "possibilities," however, is not sufficient to support a conclusion that a "serious and imminent threat to the administration of justice exists." Because the circuit court's finding does not justify the conclusions necessary for entry of a "gag" order, the April 2 order constitutes an impermissible prior restraint on Monsanto's right of free speech.

Monsanto further challenges the "gag" order as unconstitutionally overbroad. In support of its position, Monsanto relies on *CBS, Inc. v. Young* (6th Cir. 1975), 522 F.2d 235, *Chase v. Robson* (7th Cir. 1970), 435 F.2d 1059, and *Cooper v. Rockford Newspapers, Inc.* (1975), 34 Ill. App. 3d 645.

In *CBS, Inc.*, the order prohibited counsel, court personnel, the parties, and their relatives, friends, and associates "from discussing in any manner whatsoever these

cases with members of the news media or the public."
(*CBS, Inc. v. Young* (6th Cir. 1975), 522 F.2d 234, 236.)
The restraining order in *Chase* enjoined the government,
the defendants, and counsel from making any public
statements concerning the jury, the witnesses, the evi-
dence, the merits, and the court rulings in a pending
criminal case. (*Chase v. Robson* (7th Cir. 1970), 435 F.2d
1059, 1060.) In *Cooper*, the order prohibited a newspa-
per, which was a party defendant to a libel suit, from
writing editorials or editorializing about the case during
the pendency of the litigation. (*Cooper v. Rockford News-
papers, Inc.* (1975), 34 Ill. App. 3d 645, 648.) These or-
ders restraining extrajudicial comments by counsel and
parties were held to be impermissible, overbroad prior
restraints on freedom of speech because they curtailed
speech which did not present a threat to a fair trial
along with speech which presented such a threat.

. The broad scope of the "gag" order in our case pro-
vides that Monsanto "shall not," in any press release, etc.,
"mention this case or intimate its existence or its trial or
any particular facts or circumstances or positions of parties
concerning it until judgment is entered by this court." As
stated in *CBS*, "[a]ccording to its literal terms no discus-
sions whatever about the case are permitted *** whether
prejudicial or innocuous, whether subjective or objective,
whether reportorial or interpretive. We find the order to be
an extreme example of a prior restraint upon freedom of
speech and expression ***." (*CBS, Inc. v. Young* (6th Cir.
1975), 522 F.2d 234, 239-40.) The restrictions of the "gag"
order in our case prohibiting "all mention" of this case or
intimating its existence, etc., whether or not such expres-
sions constitute a serious and imminent threat to the ad-
ministration of justice, are just too broad to pass constitu-
tional muster. Under the broad terms of the "gag" order it
could refer not only to a press release by Monsanto which
poses a serious threat to the plaintiffs' ability to have their

case tried before an unprejudiced jury, but it could also refer to a press release which poses no such threat. Because an order must be narrowly drawn so as not to prohibit speech within first amendment rights that would not be prejudicial to a fair trial (*Carroll v. President & Commissioners of Princess Anne* (1968), 393 U.S. 175, 183-84, 21 L. Ed. 2d 325, 332-33, 89 S. Ct. 347, 353), we conclude that the "gag" order as written and as applied to Monsanto and its attorneys is unconstitutionally overbroad.

The "gag" order's restrictive and limiting character is also compounded when its vagueness is considered. Where first amendment interests are at stake, only a precise order, statute, or rule "evincing a legislative [or judicial] judgment that certain specific conduct be limited or proscribed" is permissible. (*Edwards v. South Carolina* (1963), 372 U.S. 229, 236, 9 L. Ed. 2d 697, 702, 83 S. Ct. 680, 684.) Thus, "an enactment is void for vagueness if its prohibitions are not clearly defined." (*Grayned v. City of Rockford* (1972), 408 U.S. 104, 108, 33 L. Ed. 2d 222, 227, 92 S. Ct. 2294, 2298-99.) The policy of the doctrine of vagueness is to provide a fair warning to those affected by the statute, rule, or order (*Papachristou v. City of Jacksonville* (1972), 405 U.S. 156, 162, 31 L. Ed. 2d 110, 115, 92 S. Ct. 839, 843), and to prevent infringements upon constitutionally protected activity (*Cramp v. Board of Public Instruction* (1961), 368 U.S. 278, 287, 7 L. Ed. 2d 285, 292, 82 S. Ct. 275, 280-81).

Monsanto relies on *Hirschkop v. Snead* (4th Cir. 1979), 594 F.2d 356, to demonstrate the vagueness of the circuit court's order. In that case, the court of appeals scrutinized Disciplinary Rule 7—107(d) of the Virginia Code of Professional Responsibility, which prohibited attorneys participating in criminal trials from making any statements about "*other matters that are reasonably likely to interfere with a fair trial.*" (Emphasis added.) (594 F.2d 356, 371.) In holding this rule void for vague-

ness, the court reasoned:

> "This proscription is so imprecise that it can be a trap for the unwary. It fosters discipline on a subjective basis depending entirely on what statements the disciplinary authority believes reasonably endangers a fair trial. Thus neither the speaker nor the disciplinarian is instructed where to draw the line between what is permissible and what is forbidden." (594 F.2d 356, 371.)

In the present case, paragraph one of the circuit court's order, which we above found to be overbroad, prohibits Monsanto and its counsel from "mention[ing] *this case* or intimat[ing] *its existence* or *its trial* or any particular facts or circumstances or positions of parties concerning it until judgment is entered by this Court." (Emphasis added.) (133 Ill. App. 3d 597, 602.) Paragraph two prohibits Monsanto "from taking any action outside this courtroom that is *calculated to or is reasonably foreseeable to influence any juror in this cause.*" (Emphasis added.) (133 Ill. App. 3d 597, 602.) Although *Hirschkop* involved a disciplinary rule rather than a judicial order, its reasoning is equally applicable to this case. Accordingly, by not specifying in an adequately clear fashion what conduct and utterances are proscribed, the italicized language in paragraphs 1 and 2 of the order in question fails to provide a fair and reliable warning of its portent.

Because Monsanto can only guess as to what action and utterances will fall under this proscription, there can be little question that it may be deterred from exercising permissible first amendment rights. As Justice Karns cogently observed in his dissent in this case in the appellate court:

> "While Monsanto is assured that it is free to engage in the national debate on dioxin so long as no mention of this case or 'intimation' of its existence or the trial is made, one can understand its reluctance to do so while

this injunctive order is in effect. \*\*\* The mere presence of this order has a 'chilling' effect on protected speech and certainly would discourage conversation or communication with the news media about any aspect of dioxin inasmuch as the words used might be perceived to 'intimate' the existence of 'this case' or 'its trial.'" (133 Ill. App. 3d 597, 606.)

Under these circumstances, we cannot permit the possibility of such an unwarranted "chilling" effect on Monsanto's legitimate expression rights. We therefore conclude that the circuit court's "gag" order is unconstitutionally vague since it is incapable of interpretation except at Monsanto's peril.

Finally, this injunctive restraint on free speech is unnecessary in light of the assurances given by counsel for Monsanto that it does not intend to engage in the activity which the order prohibits. Even without such assurances, however, the "gag" order is unnecessary because less restrictive alternative measures are available to the trial court to preserve the integrity of the proceedings before it. A trial court has the inherent power to punish contemptuous conduct and may fashion appropriate remedies for a party's contumacious behavior. (*People v. Javaras* (1972), 51 Ill. 2d 296, 299; *Shatkin Investment Corp. v. Connelly* (1984), 128 Ill. App. 3d 518, 529.) Conduct "calculated to embarrass, hinder or obstruct a court in its administration of justice or to derogate from its authority or dignity, or bring the administration of law into disrepute" constitutes contempt of court. (*In re Estate of Melody* (1969), 42 Ill. 2d 451, 452.) Any extrajudicial attempt by Monsanto to influence the outcome of this litigation by communicating with the jury or in any manner attempting to influence the jury thus would be contemptuous behavior punishable by the trial court. In fact, plaintiffs have sought to punish Monsanto for contempt based on the same facts which are the basis for

the injunctive relief granted by the court. We believe reasonable alternatives are available to the trial court short of prior restraint which will sufficiently deter Monsanto from threatening the integrity of the administration of justice in this case.

Because the heavy presumption against the constitutional validity of the "gag" order has not been overcome, we hold that the circuit court's April 2 order is an unconstitutional prior restraint of free speech protected by the first and fourteenth amendments of the United States Constitution.

For the reasons set forth, the order of the appellate court in cause No. 61691 is reversed and the cause is remanded to the appellate court with directions to consider Monsanto's petition for leave to appeal from the circuit court's December 13, 1984, order. The appellate court affirmance of the April 2, 1984, order of the circuit court in cause No. 61749 is reversed, and the cause is remanded to the circuit court of St. Clair County with directions to vacate this order.

> *61691 — Appellate court reversed;*
> *cause remanded, with directions.*
> *61749 — Judgment reversed;*
> *cause remanded, with directions.*

JUSTICE GOLDENHERSH took no part in the consideration or decision of this case.

CHIEF JUSTICE CLARK, concurring:

Although I agree with the reasoning employed and the result reached by the majority, I find this whole situation disturbing. This case should be tried in the circuit court, not in the reviewing courts.

Perhaps a review of the procedural history of this case will serve to illustrate my point. In cause No. 61691, after denial of its first motion to dismiss on the

grounds of *forum non conveniens*, Monsanto filed a motion for leave to petition for a writ of *mandamus* in this court. This motion was denied by this court on September 3, 1981. On September 13, 1982, Monsanto filed a second motion in the circuit court seeking dismissal on *forum non conveniens* grounds. The circuit court denied this second motion. Monsanto filed a petition for leave to appeal to the appellate court under newly amended Rule 306, and the appellate court denied Monsanto's petition. Monsanto then appealed to this court pursuant to our Rule 315. We denied Monsanto's petition.

On September 28, 1984, Monsanto filed a motion for reconsideration in the circuit court, asking the court to reconsider the denial of its second motion to dismiss. The circuit court denied the motion to reconsider. Monsanto then filed a petition for leave to appeal in the appellate court on January 14, 1985, seeking review of the circuit court's denial of its motion to reconsider. The appellate court dismissed the appeal on the ground that it lacked jurisdiction. Monsanto again petitioned this court, and we granted its petition.

In cause No. 61749, plaintiffs filed a motion seeking to hold Monsanto in contempt for allegedly attempting to influence the outcome of the trial by communicating with the jurors outside the courtroom. The circuit court issued a 10-day temporary restraining order. A hearing was held to determine whether a preliminary injunction should issue, and the court, on its own motion, extended the temporary restraining order. The circuit court then issued an order prohibiting Monsanto from taking any action outside the courtroom which could be interpreted as being calculated to influence any juror. Monsanto appealed to the appellate court. The appellate court affirmed the circuit court's order, and Monsanto filed a petition for leave to appeal in this court. We allowed Monsanto's petition.

The procedural history in this case is ongoing. At the time of my writing of this concurrence, Monsanto has filed eight new motions with this court. Although I am acutely aware of the importance of these consolidated cases, I do not believe that this case deserves consumption of an inordinate amount of this court's time.

The trial in this case is in its second year and has the dubious distinction of being called "[t]he longest jury trial in the nation's history" (Chicago Sun-Times, March 23, 1986, at 66). Since the trial began, four jurors have stepped down because of health problems. Other jurors may also become unable to continue and a mistrial may eventually have to be declared. It may come to pass in this case that justice delayed is justice denied.

I believe that this court should refuse to be used as a pawn in such a waste of judicial resources. Therefore, I concur.