LAW OFFICES OF JEFFERY M. LEVING, LTD., Plaintiff-Appellee, v. STEVEN R. COTTING, Defendant-Appellant.

First District (1st Division)    No. 1—03—1639

Opinion filed September 29, 2003.—Rehearings denied October 17, 2003, and November 19, 2003.—Modified opinion filed November 24, 2003.

Steven R. Cotting, of Atlanta, Georgia, appellant *pro se.*

Natalie M. Stec, of Law Offices of Jeffery M. Leving, of Chicago, for appellee.

PRESIDING JUSTICE O'MALLEY delivered the opinion of the court:

Plaintiff, the Law Offices of Jeffery M. Leving, Ltd. (the firm), filed suit in the circuit court of Cook County alleging that defendant,

Steven R. Cotting, failed to pay $2,805.98 in fees for legal services on his behalf. Cotting filed *pro se* motions challenging jurisdiction and venue and requesting that the trial court dismiss the firm's action. The trial court denied Cotting's motions finding, *inter alia*, that the circuit court of Cook County had jurisdiction and that venue was proper. Cotting filed a *pro se* petition for leave to appeal the order of circuit court of Cook County denying his motion to transfer venue based on *forum non conveniens* pursuant to Supreme Court Rule 306 (166 Ill. 2d R. 306(a)(4)).

We deny Cotting's petition for want of jurisdiction.

## BACKGROUND

Plaintiff, the Law Offices of Jeffery M. Leving, Ltd., filed suit in the circuit court of Cook County seeking $2,805.98 in fees allegedly incurred by Steven Cotting. The firm and Cotting had entered into a contractual agreement whereby the firm agreed to provide legal services to Cotting relating to a judgment in Georgia granting certain custodial rights of Cotting's daughter to his former spouse. The agreement stated that the firm would "represent client in pending petitions in case No. 01—A—3232—6 (Georgia) and prepare and prosecute petition for modification of custody and such other work as law office deems necessary."

Cotting claims that he contacted the firm on October 8, 2001, after reading an advertisement on the Internet sponsored by Jeffery M. Leving, Ltd., claiming a specialty in "fathers' rights." The Internet ad also indicated that the firm represents fathers across the country and internationally. Cotting spoke to an attorney from the firm who was going to represent him in the Georgia case. Cotting claims that the attorney told him that the trial court judge was biased and that he should retain the firm to represent him in petitioning the Georgia court for a new trial. The attorney allegedly represented to Cotting that he was not intimidated by judges and, further, local counsel would not be suitable for this type of petition because they would be concerned about their future practice before the judges in Georgia.

Cotting also maintains that the attorney told him that a $35,000 retainer was required and that as soon as he could raise the money the firm could begin on the case. According to Cotting, the attorney called regularly between October 9 and October 28 to see if Cotting had raised the money and on one occasion allegedly told Cotting to "raise the money quickly or risk losing his daughter forever." Cotting raised the money and sent the retainer to the firm. After receiving the money, the attorney did not respond to Cotting for weeks. Cotting claims to have repeatedly called the attorney for updates on the case

and general progress, but rarely received answers. Cotting testified at a hearing in the circuit court that he had phone records showing that he placed over 100 calls to the attorney and the firm and received no response.

Cotting claims that when the attorney finally came to Georgia and communicated with him, he ignored all of the information he had given the attorney for filing his motion for modification. Cotting alleges that the attorney refiled a copy of a previously submitted motion in the original Georgia proceeding and changed the title. The trial court in Georgia, according to Cotting, recognized the pleading as identical to a pleading filed in the prior proceeding and fined Cotting $14,000 for "abusive litigation." Cotting further alleges that a transcript of the above proceeding shows that the attorney was unprepared, could not answer simple questions asked by the judge concerning basic statutory matters and was unable to respond to issues put to him by opposing counsel. The trial court further ordered Cotting to pay opposing counsel's fees resulting from the petition for modification of the custody arrangement.

Cotting also argues that, in addition to being unfamiliar with the facts, issues and law related to his case, the firm overbilled him, created false invoices, doctored the terms of the engagement contract and continued to bill Cotting for services even after he discharged the attorney in writing. Cotting compares the services rendered by the firm to those rendered by local counsel. The firm, which allegedly performed very little work, billed over $37,000 whereas local counsel who was responsible for the majority of the pleadings in the petition for rehearing billed a total of $2,000.

On April 29, 2002, Cotting faxed a complaint to Jeffery Leving (the individual), indicating his belief that the attorney from the Leving firm engaged in fraud. Cotting requested that the firm return his entire retainer plus $25,000 in damages, a written apology and assurances that internal procedures would be instituted to guarantee that this would not happen to others. After the faxed letter, the firm's managing partner contacted Cotting on May 2, 2002, to investigate the matter. Several communications by fax and telephone followed. Cotting gave the managing partner examples of the attorney's misconduct and poor performance. The managing partner requested more information and told Cotting that he would investigate the matter further.

However, on May 11 and 16, 2002, Cotting faxed letters to the managing partner with no response. On May 17, 2002, Cotting attempted to call the managing partner and the latter refused his call. Later that day, Cotting claims that he received a call from the firm's

malpractice carrier inquiring about his complaint. The representative supposedly stated that she would attempt to have the firm settle the case with Cotting and respond to him. Instead, on June 24, 2002, Cotting was served with a complaint filed in the circuit court of Cook County alleging that Cotting owed $2,805.98 to the firm for unpaid legal fees.

Cotting claims that the billing statement for the additional fees was never sent to him prior to filing the complaint. He further alleged that the work billed in that invoice was, in part, performed after Cotting requested that no more work be done without authorization on March 25, 2002, and after he formally discharged the attorney on April 29, 2002. Moreover, the billing statement was dated May 7, 2002, as was the sworn affidavit of the managing partner, only five days after Cotting complained to him and threatened to sue the firm in Georgia.

An *ex parte* default judgment was entered in favor of the firm on August 7, 2002. On August 20, 2002, Cotting, representing himself, filed motions to vacate the default judgment, transfer jurisdiction and venue and dismiss the action pending in the circuit court. Cotting claims that he traveled from Georgia to Chicago to appear in circuit court on four occasions to deal with this litigation. On February 10, 2003, Cotting's motion to transfer jurisdiction and venue and to dismiss were denied by the trial court. The court found that both jurisdiction and venue were proper and that no affirmative matters defeated the firm's properly pleaded cause of action. On March 13, 2003, Cotting filed an answer and counterclaim against the firm. On April 18, 2003, Cotting filed a motion to reconsider the order denying the motion to transfer jurisdiction and venue. On May 12, 2003, the trial court denied Cotting's motion for reconsideration finding that it was untimely filed and that filing a written answer to the original complaint, counterclaim and jury demand waived all objections to jurisdiction in the circuit court of Cook County.

On June 10, 2003, Cotting filed a "petition for interlocutory appeal," requesting that this court grant him leave to appeal the trial court's denial of his *forum non conveniens* challenge. For the reasons that follow, we deny defendant's petition.

## ANALYSIS

The firm claims that Cotting filed his petition for leave to appeal beyond the 30-day period prescribed in Supreme Court Rule 306. 166 Ill. 2d R. 306(b). The firm argues that February 10, 2003, the date the trial court denied the original motion to transfer jurisdiction and venue, is the point from which the 30-day period begins. Cotting

argues that the original motion to transfer jurisdiction and venue was based on the "General Venue Statute" (735 ILCS 5/2—104 (West 2002)) and not on a theory of *forum non conveniens*. The motion to reconsider, on the other hand, was based on *forum non conveniens* in addition to section 2—104 of the Code of Civil Procedure (Code) (735 ILCS 5/2—104 (West 2002)), making the motion to reconsider the first time Cotting raised the issue of *forum non conveniens*. Therefore, the 30-day period should begin from the date when the trial court denied his motion for reconsideration, which was May 12, 2003.

■ Supreme Court Rule 306 allows for permissive appeals from, *inter alia*, orders granting or denying motions to transfer venue based on *forum non conveniens*. 166 Ill. 2d R. 306(a)(4). The rule requires, as a prerequisite to invoking appellate jurisdiction, the filing of a petition " 'in the Appellate Court in accordance with the requirements for briefs within 30 days after the entry of the order.' " *National Seal Co. v. Greenblatt*, 321 Ill. App. 3d 306, 308, 748 N.E.2d 333 (2001), quoting 166 Ill. 2d R. 306(b). The 30-day time limit under Rule 306 is jurisdictional. *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 236 N.E.2d 1327 (1986). Moreover, a motion to reconsider filed in the trial court does not postpone the time in which to appeal. *Odom v. Bowman*, 159 Ill. App. 3d 568, 571, 511 N.E.2d 1265 (1987); *Buckland v. Lazar*, 145 Ill. App. 3d 436, 438, 495 N.E.2d 1254 (1986).

However, here, Cotting claims that the original motion was not based on *forum non conveniens*, but, rather, the motion was based on the general venue statute (735 ILCS 5/2—104 (West 2002)). Cotting cites to *Kemner*, 112 Ill. 2d at 231, and *Barnes v. Southern Ry. Co.*, 116 Ill. 2d 236, 507 N.E.2d 494 (1987) (overruled on other issues), as authority departing from a strict construction of the 30-day time period for vesting jurisdiction in this court.

In *Kemner*, the defendant filed three separate motions to dismiss on *forum non conveniens* grounds. The court denied the first motion on May 29, 1981. With no mechanism for a direct appeal of such an order then existing, the defendant filed a petition for a writ of *mandamus*, which was denied. *Kemner*, 112 Ill. 2d at 229. The circuit court denied the defendant's second motion on April 29, 1983, and the reviewing courts denied the defendant's petitions for leave to appeal. *Kemner*, 112 Ill. 2d at 230-31. The defendant filed a third motion, entitled a "motion to reconsider," on September 28, 1984, alleging facts that had come to light during discovery to bolster its contention that the chosen forum was not convenient. The trial court denied the motion on December 13, 1984. *Kemner*, 112 Ill. 2d at 231. The appellate court denied a petition for leave to appeal, but the supreme court granted it and reversed the trial court's order.

The supreme court held that it had jurisdiction despite the 30-day time limit in Rule 306 because the "motion to reconsider" was in reality a new original motion to dismiss. *Kemner*, 112 Ill. 2d at 238. It held that the September 28, 1984, motion was not an attempt to extend the time to appeal the denial of the 1983 motion because the defendant had already pursued an appeal from the earlier order. *Kemner*, 112 Ill. 2d at 239. The court stated, "The fact that a circuit court ruling was obtained and a timely appeal sought as to each motion leads us to conclude that each motion was in substance a new original motion seeking dismissal on the basis of *forum non conveniens.*" *Kemner*, 112 Ill. 2d at 239.

In *Barnes*, the trial court held that a motion labeled a "motion for reconsideration" was not controlling as to the substance of the motion when in fact it presented new factual information. *Barnes*, 116 Ill. 2d at 244-46. The court in *Barnes* so concluded even though an appeal from the first motion to decline jurisdiction based on *forum non conveniens* was not taken by the defendant in that case. *Barnes*, 116 Ill. 2d at 245. However, the court in *Barnes* also noted that the reason the defendant's second motion was, in essence, a new motion was that the plaintiff in that case delayed substantially in complying with discovery orders, and the defendant was able to verify and bring the motion only after the plaintiff's compliance. *Barnes*, 116 Ill. 2d at 245.

In our view, Cotting's situation is distinguishable from the authority upon which he relies. First, although Cotting's original motion to transfer jurisdiction and venue seems to allege only issues related to section 2—104 of the Code (735 ILCS 5/2—104 (West 2002)), the reply to the firm's response to deny the motion to transfer jurisdiction and venue alleges facts considered in a *forum non conveniens* argument. The opening paragraph of Cotting's reply to the firm's response to his motion to transfer jurisdiction and venue is as follows:

"NOW COMES Steven R. Cotting, the Defendant named herein, *** and shows the court the Plaintiff has called the defendant to a place unusual, uncomfortable and distant from the records and witnesses and distant from the place where the case is most closely associated for the sole purpose of fatiguing the Defendant into relinquishing his rights."

Also, paragraph 2 of Cotting's argument section in his motion for reconsideration begins with the following: "the court denied Steven's Motion to Transfer Jurisdiction and Venue based on the common law doctrine of *forum non conveniens* even though the balance of factors strongly favored transfer." The facts in the motion to reconsider were more detailed, but not necessarily new facts that came to light between motions, as far as the record reflects.

Second, there was no initial appeal from the original motion to transfer jurisdiction and venue. This distinguishes the case before the court from *Kemner* because, there, the court emphasized the fact that the defendant faithfully pursued a remedy by making some type of timely appeal after each motion was denied. That element is missing here because no action, other than the motion to reconsider that was filed on April 18, 2003, was pursued after the trial court's denial of Cotting's motion on February 10, 2003.

■ In *Barnes,* the circumstances that allowed the defendant there to raise a new motion subsequent to the original was the plaintiff's delay in complying with discovery orders and new information apparently obtained after compliance. Additionally, the court in *Barnes* made a special note that the defendant's subsequent motion was filed for the purpose of supplying an adequate record on review. Here, there are no allegations that the firm was responsible for Cotting's delay in filing a petition for leave to appeal or that Cotting was preserving new information in the record for review. We, therefore, conclude that Cotting's petition for leave to appeal must be denied as untimely and dismissed for want of jurisdiction. *National Seal Co.,* 321 Ill. App. 3d at 308.

While the allegations of attorney misconduct against the Law Offices of Jeffery M. Leving, Ltd., are deeply disturbing, they must be addressed in the substantive determination of the trial court, and if substantiated, would warrant disciplinary action by the appropriate regulatory entity as well. Such practices are wholly unworthy of attorneys and would only serve to deepen the already profound well of cynicism with which the public views the legal profession. However, such conduct, no matter how egregious, would not suffice to vest this court with subject matter jurisdiction over this procedurally based appeal at this time.

Accordingly, for the foregoing reasons, defendant's petition for leave to appeal is denied.

Denied.

GORDON and McNULTY, JJ., concur.