Joseph A. **RUGGIERI**

v.

**JOHNS–MANVILLE PRODUCTS CORPORATION et al.**

Civ. A. No. 79–0425.

United States District Court,
D. Rhode Island.

Nov. 20, 1980.

Richard A. Cappalli, Cappalli, Greco & Ialongo, Cranston, R. I., Ronald L. Motley, Blatt & Fales, Barnwell, S. C., for Joseph A. Ruggieri.

Bruce M. Selya, Selya & Iannuccillo, Inc., Providence, R. I., Peter C. Schwartz, Gordon, Muir & Foley, Hartford, Conn., for Johns–Manville Products Corp.

John A. Baglini, Higgins & Slattery, Providence, R. I., for Fibreboard Corp.

Raymond A. LaFazia, Gunning, LaFazia & Gnys, Inc., Providence, R. I., for Unarco Industries, Inc.

Joseph V. Cavanagh, Higgins, Cavanagh & Cooney, Providence, R. I., for Owens–Illinois, Inc.

Bruce G. Tucker, Roberts, Carroll, Feldstein & Tucker, Providence, R. I., for Owens–Corning Fiberglass Corp.

John F. Cuzzone, Jr., Quinn, Cuzzone, Geremia & Pennacchia, Providence, R. I., for The Celotex Corp.

V. James Santaniello, Manning, West, Santaniello & Pari, Providence, R. I., for Raybestos–Manhattan, Inc.

John F. Dolan, Rice, Dolan, Kiernan & Kershaw, Providence, R. I., for H. K. Porter.

Harry W. Asquith, Edward W. Moses, Asquith, Wiley & Ryan, Providence, R. I., for Eagle–Picher Industries Inc.

George M. Vetter, Jr., Howard E. Walker, Hinckley, Allen, Salisbury & Parsons, Providence, R. I., for Bethlehem Steel Corp.

John V. Kean, Joseph V. Cavanagh, Jr., Edwards & Angell, Providence, R. I., John Buergler, Houston, Tex., for Exxon Corp.

## MEMORANDUM AND ORDER

PETTINE, Chief Judge.

The defendant, Raybestos–Manhattan, is asking this Court to disqualify Ronald L. Motley, an attorney for the plaintiff, from participating in this or any other "asbestos litigation" or prohibit him from making extrajudicial comments concerning such cases. Serious questions concerning the right of freedom of speech secured by the first and fourteenth amendments are involved.

This pending trial is only one of many highly publicized asbestos cases presently before the Court. On July 9, 1980, Mr. Motley appeared on a Columbia Broadcasting System network which nationally televised a show entitled "See You in Court". In part the broadcast dealt with nationwide asbestos litigation. Mr. Motley referred to the so–called Sumner Simpson papers–a series of letters allegedly locked in the safe of the president of an asbestos company; these letters produced through the discovery process purportedly show that the major asbestos companies were aware of the claimed danger of asbestos inhalation as early as 1935. Mr. Motley stated, "The tragedy of it is that this asbestos exposure occurred after 1935, when he chose to keep the lid on, and it–the exposure–occurred in the thirties, forties, fifties, and sixties, and now we're seeing thousands and thousands of people dying as a result of that exposure." The only other part of the show involving Mr. Motley is a scene wherein he is engaged in a conversation with a Mr. Roy Seckinger, an individual described as "an itinerant asbestos insulator". The exchange between them was as follows:

Motley: Did they ever tell you anything about this stuff making you sick?

Seckinger: No.

Motley: Nobody's ever told you anything but your doctor when you got sick?

Seckinger: Right.

Motley: Never told you anything?

Seckinger: No.

Motley: Just–just didn't tell you anything.

Seckinger: Just didn't tell me nothing.

The defendant argues that Mr. Motley violated the American Bar Association Disciplinary Rule 7–107(G) in that "[t]he statements were not a 'quotation from or reference to' public records" and, in light of the nature of the broadcast, Motley knew the statements would be "disseminated by means of public communication".

The defendant's reaction to these statements is quite understandable since they reflect adversely on the character of asbestos insulation manufacturers. Rule 39[1] of the Local Rules of this Court incorporates, except for certain minor changes, the entirety of Rule 7–107(G).

<span style="background:black"> </span> The right of an attorney to comment on pending litigation does not solely concern the first amendment right to free speech. There is necessarily involved the sixth and fourteenth amendments mandating a fair trial which is "the most fundamental of all freedoms [and] must be maintained at all costs." *Estes v. Texas,* 381 U.S. 532, 540, 85 S.Ct. 1628, 1631, 14 L.Ed.2d 543 (1964). It is equally important that it be accommodated to first amendment

---

1. The pertinent portion of Local Rule 39(6) is as follows:

A lawyer or law firm associated with a civil action shall not during its investigation or litigation make or participate in making an extrajudicial statement, other than a quotation from or reference to public records, which a reasonable person would expect to be disseminated by means of public communication if there is a reasonable likelihood that such dissemination will interfere with a fair trial and which relates to:

(1) Evidence regarding the occurrence or transaction involved;

(2) The character, credibility, or criminal record of a party, witness, or prospective witness;

(3) The performance or results of any examination or tests or the refusal or failure of a party to submit to such;

(4) His opinion as to the merits of the claims or defenses of a party, except as required by law or administrative rule;

(5) Any other matter reasonably likely to interfere with a fair trial of this action.

This rule does not prohibit an attorney in a civil action from expressing his opinion to his corporate client for dissemination to stockholders.

rights so as not to improperly curtail access to information. Rigid restrictions upon the rights of attorneys to discuss pending litigation or disclose information concerning a case encroaches upon his right to freedom of expression.

The accommodation lies in the degree of control the Court should exercise in curtailing the rights of attorneys who are officers of the Court but indeed private citizens as well. The Seventh Circuit has developed a "serious and imminent threat" test rejecting the "reasonable likelihood" test as adopted in the local rules of many district courts and by the American Bar Association in promulgating Rule 7–107. *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242 (7th Cir. 1975) *cert. denied*, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976).

The Fourth Circuit in *Hirschkop v. Snead*, 594 F.2d 356 (1979) reached a contrary result upholding the "reasonable likelihood" test. Though these circuits had their own unique reasoning as to the limitations to be imposed on attorneys in criminal cases, both held it unconstitutional to prohibit lawyers' comments during civil litigation.

Again some preliminary observations are necessary. In the context of these restrictions on attorneys' comment it is important to note particular distinctions between civil and criminal litigation. First, we should recognize that although we rightfully place a prime value on providing a system of impartial justice to settle civil disputes, we require even a greater insularity against the possibility of interference with fairness in criminal cases. Perhaps this is symbolically reflected in the Sixth Amendment's requirement of an "impartial jury" in criminal cases whereas the Seventh Amendment guarantees only "trial by jury" in civil cases. The point to be made is that the mere invocation of the phrase "fair trial" does not as readily justify a restriction on speech when we are referring to civil trials.

Another vital factor is the length of civil litigation. Normally, civil litigation will be more prolonged than criminal litigation. One reason is that priority is afforded criminal matters because of the constitutional right to a speedy trial. Also, our civil rules allow much more discovery than our criminal rules. A civil case may last for years just in the discovery stage. DR7–107(G) is not geared to specific time frames. It provides for blanket coverage of the period of "investigation or litigation." We are not sure of the parameters of an "investigation" of a civil matter, but given rather lengthy statutes of limitations we assume that there might be a restriction on speech for many years before a complaint is even filed. And the use of general term "litigation" implies that attorneys' comments are also proscribed while a case is on appeal. The criminal no–comment rules contain no restrictions on statements made after sentencing. It is clear that DR7–107(G) cannot be deemed a prohibition on speech that applies only for a limited period. Restrictions for many years are quite possible. Therefore, the broad time span of this rule relating to civil matters is an influential factor weighing against its constitutionality.

Finally, there is the element of the nature of certain civil litigation. As plaintiffs indicate, in our present society many important social issues became entangled to some degree in civil litigation. Indeed, certain civil suits may be instigated for the very purpose of gaining information for the public. Often actions are brought on behalf of the public interest on a private attorney general theory. Civil litigation in general often exposes the need for governmental action or correction. Such revelations should not be kept from the public. Yet it is normally only the attorney who will have this knowledge or realize its significance. Sometimes a class of poor or powerless citizens challenges, by way of a civil suit, actions taken by our established private or semi–private institutions or governmental entities. Often non–lawyers can adequately comment publicly on behalf of these institutions or governmental entities. The lawyer representing the class plaintiffs

may be the only articulate voice for that side of the case. Therefore, we should be extremely skeptical about any rule that silences that voice.

*Chicago Council of Lawyers, supra,* pp. 257–258; *see Hirschkop, supra* p. 373.

The Judicial Conference, at its September 1980 meeting, abandoned prohibiting attorney comment in civil litigation feeling that this area can best be handled by special orders when warranted.

■ As it pertains to civil cases, Rule 39 of this Court does not meet the standards set forth in the cases cited, *supra* and shall not be controlling here. Counsel rightfully points to an inconsistency in this rule. The section on pending criminal litigation adopts a "serious and imminent threat" test while that portion concerning civil litigation is couched in the "reasonable likelihood" standard. This, of course, makes no sense. Counsel is correct in arguing that the standard in civil cases must necessarily be equal to or higher than that allowed for in criminal proceedings.

■ Whether we label a no–comment rule as a "prior restraint" carrying a "heavy presumption against its constitutional validity," *Organization for a Better Austin v. Keefe,* 402 U.S. 415, 419, 91 S.Ct. 1575, 1577, 29 L.Ed.2d 1, or a rule outside such constitutional restrictions but nevertheless with certain inherent features of "prior restraints," *Chicago Council of Lawyers, supra,* it all distills itself to the ultimate conclusion that First Amendment expressions cannot be totally abridged. The fact is that the two constitutional rights involved in the judicial process must be protected; standards and definitions in other situations are not necessarily controlling; though precedent offers guidance, the aim is to fashion rules singularly applicable to insure a fair trial.

This is a civil case and what hereinafter follows pertains only to civil litigation. This is not to say, however, that much might not also apply to criminal cases.

■ Each civil case presents its own peculiar setting; no general rule can be established. However, it seems to me that when a court concludes there is a need in a case to formulate rules designed to protect the judicial process of that trial, the only comment that can be proscribed, when no other protective alternative exists, is that which in some meaningful way is targeted to the case to be tried and which poses a "serious and imminent threat" to that trial. I do not feel that this threat must be premised on a "prior restraint" rule. The competing interests of the two constitutional rights at stake justify their own unique standard. It must be one that maximizes, with minimum dilution, the safeguards of each. The "serious and imminent threat" test is best suited to accomplish this end. I do not believe that even this test is without its possible exceptions. Conceivably there may be cases where anticipated comment might present a serious and imminent threat to the trial if heard by a jury already impanelled but which in the best interest of the public should not be barred. In such cases the sequestration of the jury may well safeguard the competing rights of the First, Sixth and Seventh Amendments. It is inimical to a democratic society to curb the dissemination of such news and certainly unnecessary in light of the many procedures the court can employ, tailored to the unique circumstances at hand.

The impact of pretrial publicity can be evaluated through Rule 47(a) of the Federal Rules of Civil Procedure which gives the trial judge broad discretion in conducting the examination of prospective jurors. After many years on the bench, it is this Court's opinion that jurors who are properly instructed by the court as to the solemnity of their service rise to the occasion and express their biases candidly and honestly. It is a disservice to lose faith in these men and women, who in the main are being called upon for the first time in their lives to participate in the noble cause of justice. As they can be screened before trial so can they be controlled during the trial even to the point, as I have already stated, of sequestering them if the circumstances so demand. I know of no studies that disprove

the conclusion that overwhelmingly they will follow instructions of the court not to read any news accounts of the case, discuss the evidence, or place themselves in any prejudicial ambience.

With all appreciation that a fair trial is the most fundamental of all freedoms, it cannot be gainsaid that its infinite capacity is best achieved when exposed in all its phases to an enlightened public. Overreaction by the courts to an occasional mistrial only jeopardizes one fundamental right against the other. Surely the Judicial Conference realized this in refusing to proscribe through preordained rules attorney comment in civil litigation.

■ In this case the defendant has submitted no evidence that the program in question was broadcast in this district; even assuming it was viewed in Rhode Island, there is no evidence as to the percentage of persons who viewed it. In short, there is no basis for any conclusion that Mr. Motley's statements impacted on any potential jurors. He was exercising his First Amendment rights and it has not been shown that his speech trespassed on the defendant's rights to a fair trial. It would be a serious invasion of a treasured liberty to prohibit him from continuing to discuss this very controversial issue of asbestos inhalation. When the trial is reached, at some time in the future, the Court can then assess what if anything need be done to assure a fair trial.

The defendant's motion is denied. So Ordered.