In re John ZIMMERMANN, An Attorney Licensed and Admitted to the Practice of Law in Tennessee, Respondent/Appellant,

v.

### BOARD OF PROFESSIONAL RESPONSIBILITY, Appellant.

Supreme Court of Tennessee, at Nashville.

Jan. 23, 1989.

William M. Leech, Jr., Corabel Alexander, Waller, Lansden, Dortch and Davis, Nashville, for respondent/appellant.

National Dist. Attys. Ass'n, Tennessee Attys. Gen. Conference amici curiae, for respondent/appellant.

Joseph L. Mercer, II, Harold Levinson, pro hac vice Vanderbilt University, Nashville, for appellant.

Tennessee Ass'n of Criminal Defense Lawyers, Nashville, amicus curiae, for appellant.

## OPINION

O'BRIEN, Justice.

There are appeals by each of the parties in this action which derives from a Board of Professional Responsibility petition for discipline against John Zimmermann who is a duly licensed and practicing attorney in the State of Tennessee. At the time these proceedings were initiated the respondent was a member of the staff of the District Attorney General for Davidson County. A complaint was received from the Metropolitan Public Defender charging that respondent had violated Disciplinary Rule 7–107(B). The petition for discipline requested the Board to appoint a hearing panel to hear testimony, receive evidence and make findings of facts and order disciplinary action as deemed appropriate. The specific charges filed against Zimmermann alleged that he had violated DR 7–107, (B) and (E), relating to trial publicity, by talking to the press about pending proceedings. The first instance involved a defendant charged with murder. Immediately after a preliminary hearing he purportedly engaged in an informal conversation with members of the news media which was reported in the local newspapers on the following day. In the second complaint he allegedly had a second discussion with the press after two defendants charged in a six (6) count indictment had been convicted of the charges, but prior to their sentencing hearing.

The first statement admittedly made by respondent to the media occurred outside of the courtroom immediately after a preliminary hearing at which the defendant was arraigned. Respondent commented to the assembled reporters that "the medical examiner said [the victim] was strangled, stabbed in the chest multiple times and had his throat slashed all the way across. The photographs of the body were pretty bad. We are considering asking for the death penalty. The defendant said he stabbed the victim multiple times in the chest before slashing his throat, almost from ear to ear." In the second case in a similar conversation with the press he was reported to have commented on the extreme torture suffered by the victim at the hands of the defendants. He said, "the verdicts reflected the mind of the jury for the community that such crimes against the elderly would not be tolerated and that he would ask the sentencing judge to impose maximum sentences on both defendants."

The Hearing Committee heard testimony of witnesses, statements of respondent and arguments of counsel. They reviewed the exhibits, the record of the proceedings and briefs of counsel, then reported their conclusions and findings. They were of the

opinion that, in the first case, respondent, John Zimmermann, had violated DR 7–107(B) and should receive a private reprimand for his extrajudicial comments made to representatives of the media concerning the examination and report of the medical examiner and photographs of the body, neither of which had been introduced at the preliminary hearing. They found that the defendant's confession had been introduced at the hearing, therefore it was a public record and respondent's comments in reference to it were permissible.

With respect to the other complaint they found that respondent's extrajudicial comments after the trial did not violate DR 7–107(E) because it was not reasonably likely his remarks would affect the imposition of sentence in that case.

They held that in applying the Rules of Professional Responsibility, there also must be a rule of reason applicable to their interpretation. There was no intent on the part of the respondent to interfere with a fair trial in the first case or influence the sentence to be imposed by the trial judge in the second. It was their conclusion he was following the policy of the office of the District Attorney General by being accessible to the news media. When respondent became aware that his extrajudicial comments in the first case had become the subject of a complaint to the Board of Professional Responsibility he made no further statements to the press until after the end of the trial. In the second case he intentionally did not comment to the media until after the trial was over although the sentencing phase had not been held. It was their conclusion that it was his intent to conduct himself properly.

They further held that as a public prosecutor, respondent had certain rights and responsibilities concerning the dissemination of public information. However, the Disciplinary Rules adopted by the Tennessee Supreme Court place specific restrictions on all attorneys relative to the dissemination of information concerning pending criminal trials, which must be governed by the delicate balance between the right to a fair trial on one hand and the right of free expression on the other.

Each of the parties appealed the decision of the Hearing Committee to the Chancery Court. Disciplinary counsel on behalf of the Board of Professional Responsibility complained that the private reprimand of respondent was insufficient and inappropriate based upon the facts and the alleged violations on the first complaint. As to the second they were of the opinion that the Hearing Committee erred in finding that respondent did not violate the Code of Professional Responsibility.

The petition of respondent complained that the Hearing Committee erred in finding him in violation of DR 7–107(B) in reference to Complaint No. 1. As an affirmative defense he submitted that the Hearing Committee's interpretation of DR 7–107 violated his First Amendment rights in that the record failed to show that the comments made by him posed a clear and present danger; a serious and imminent threat; or a reasonable likelihood of interfering with a fair trial of the defendant in that case.

At the conclusion of the hearing in Chancery Court the trial judge entered written findings of fact with his conclusions that the respondent technically violated Disciplinary Rule 7–107(B) and (E) in the first complaint and also technically violated DR 7–107(E) involving the second complaint. He further found that respondent's insistence was untenable that he was protected by the First Amendment to the Constitution in making the statements attributed to him. That those statements, as printed, were violations of the Sixth and Fourteenth Amendment rights of the first defendant. In reference to the second case he concluded there was a technical violation of DR 7–107(E) but that the trial judge in that case was not aware of respondent's remarks and was not influenced by them in the sentencing proceedings.

The court was of the opinion that respondent did not act maliciously or with intent to interfere with a fair trial in reference to the first complaint, or to influence the trial judge in imposing sentence in reference to

the second. He concluded that the evidence did not preponderate against the Hearing Committee's judgment in the matter and confirmed the findings of that forum in their entirety as to the discipline imposed.

Each of the parties have, in turn, appealed to this Court. Counsel for the Board of Professional Responsibility frames the issue around the appropriate sanctions to be imposed upon an Assistant District Attorney General who knowingly and intentionally violates the Code of Professional Responsibility, specifically Disciplinary Rule 7-107(B), by making improper statements to the news media after preliminary hearing and before trial of a sensational murder case.

Respondent, in his brief, inquires whether his extrajudicial statements to the press relating the medical examiner's findings violate the Disciplinary Rules. Whether the statements found by the Hearing Committee as a violation of the Disciplinary Rules warrant *punitive* action. (Emphasis ours). Whether DR 7-107, as it is applied in the present case, violates his freedom of expression rights secured by the United States and Tennessee Constitutions.

We point out that under Rule 9, § 1.3 of this Court, the review of the judgment of the Hearing Committee in the trial court is on the transcript of the evidence before that committee, its findings and judgment and upon such other proof as either party may desire to introduce. The trial judge is to weigh the evidence and determine the facts by the preponderance of the proof. The review in this Court is *de novo* upon the transcript of the record from the Circuit or Chancery Court, which shall include the transcript of evidence before the hearing committee. We must presume, however, that the trial court was correct unless the preponderance of the evidence is contrary to his finding. *Gillock v. Bd. of Prof. Resp. of the Supreme Court*, 656 S.W.2d 365, 367 (Tenn.1983).

Disciplinary counsel acting for the Board of Professional Responsibility, ably assisted by counsel pro hac vice, insists that the severity or leniency of the sanction imposed, which is the basis for their appeal, is not an issue of fact. Therefore, this Court is not bound by the decision of the Chancery Court on that issue. It is urged that the judgment of that court should be modified to order a suspension from the practice of law against respondent. It is their position that the private reprimand directed by the hearing panel and the Chancery Court is too lenient and does not give sufficient warning to respondent and other attorneys of the serious nature of the misconduct and aggravating circumstances surrounding the charges made against Mr. Zimmermann.

■ The record before us contains a concurring finding of fact with the exception that the hearing committee found respondent had violated DR 7-107(B) while the chancellor concluded there was a technical violation of both Sections B and E. Notwithstanding the judgments below, upon determining the existence of aggravating or mitigating circumstances, this Court may modify the judgment of the trial court. *Disciplinary Board v. Banks*, 641 S.W.2d 501, 504 (Tenn.1982). However, we are reluctant to substitute our judgment for that of two separate triers of fact who have reviewed the proof and heard the evidence in personam. See *Disciplinary Counsel v. Fitzgerald*, 607 S.W.2d 232, 234 (Tenn.1980). We adopt the statement made by the Hearing Committee in their judgment. "In applying the Rules of Professional Responsibility, there also must be a rule of reason applicable to their interpretation." The record clearly supports the findings of the trial judge that respondent was in technical violation of Disciplinary Rule 7-107(B) and (E) but that his conduct in discussing trial matters with the news media was neither malicious nor with the intent to interfere with the right to a fair trial of any of the defendants. The discipline imposed was adequate and appropriate. We are of the opinion his comments were not very well considered and, in order to avoid the possibility of violating an accused's constitutional rights, that it would be prudent for the District Attorney to review his "open policy with the media" in

relation to the nature of the comments his staff is encouraged to communicate.

■ Respondent has raised three issues for review, the first two of which we find it necessary to mention only in passing. We have previously discussed the Hearing Committee's conclusions that respondent's extrajudicial comments to representatives of the media concerning the examination and report of the medical examiner and photographs of the victim's body violated DR 7–107(B). The simple answer to his second complaint is that the purpose of sanctions under the Disciplinary Rules is to *discipline* and not to *punish.* The third inquiry, requires further amplification and consideration, that is whether DR 7–107, as applied in the present case, violates the freedom of expression rights secured by the United States and Tennessee Constitutions. We are of the opinion that it does not.

■ There are two specific, though divergent, reasons why the strictures against trial publicity imposed by the Disciplinary Rules are not violative of an attorney's freedom of expression rights. In the case of *In Re Rachmiel,* 90 N.J. 646, 449 A.2d 505 (1982), under strikingly similar circumstances, the New Jersey Supreme Court held that the application of a disciplinary rule which proscribed attorneys involved in criminal cases from making statements that relate to "any opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case" ... did not constitute a violation of the Right to Free Speech under the First Amendment. In that case a former prosecutor, after he had returned to private practice, made comments concerning a criminal case which he had previously handled. A complaint was filed by the county prosecutor with the District Ethics Committee. The committee issued a formal complaint against *Rachmiel* and held hearings. A presentment was filed charging him, inter alia, with violation of DR 7–107(B) and (E).[1] The New Jersey Court, citing appropriate authorities, held:

"In determining the validity of restrictions upon free speech, the constitutional analysis calls for the application of two demanding tests. The first is whether a substantial governmental interest is furthered by the restriction upon speech. (Citation omitted). The second requires that the restriction be no greater than is necessary or essential to protect the governmental interest involved. The application of these tests involves a balancing of the gravity and likelihood of the harm that would result from unfettered speech against the degree to which free speech would be inhibited if the restriction is applied. (Citations omitted).... [T]he restriction upon free speech imposed by the Disciplinary Rule addresses a substantial governmental interest. That interest relates to the fairness and integrity of the administration of justice and becomes particularly compelling in the administration of the criminal justice system. (Citations omitted).... The rule in question furthers a substantial governmental interest in that it attempts to restrict speech that would be prejudicial or deleterious to the administration of criminal justice.

The ethical rule at issue in this case imposes restraints upon a limited class of persons—attorneys for the prosecution or defense in a pending criminal matter. These persons have a unique role and responsibility in the administration of criminal justice and, therefore, have an extraordinary power to undermine or destroy the efficacy of the criminal justice system. (Citations omitted).... [S]uch attorneys are appropriately subject to carefully tailored restraints upon their free speech."

The court ruled that the prohibition applied only to that speech which is "reasonably likely" to interfere with or affect a fair trial. We adopt the reasoning of the New Jersey court on this issue.

There is a further reason why in this State there is no unreasonable restraint placed on the freedom of speech rights of an attorney admitted to practice law in

---

**1.** The New Jersey rule is identical to Tennessee Supreme Court Rule 9.

accordance with the rules governing such matters.

The preamble to the Code of Professional Responsibility states in pertinent part:

"Lawyers, as guardians of the law, play a vital rule in the preservation of society. The fulfillment of this rule requires an understanding by lawyers of their relationship with and function in our legal system. A consequent obligation of lawyers is to maintain the highest standard of ethical conduct.

In fulfilling his professional responsibilities, a lawyer necessarily assumes various roles that require the performance of many difficult tasks. Not every situation which he may encounter can be foreseen, but fundamental ethical principles are always present to guide him. Within the framework of these principles, a lawyer must with courage and foresight be able and ready to shape the body of the law to the everchanging relationships of society.

The Code of Professional Responsibility points the way to the aspiring and provides standards by which to judge the transgressor. Each lawyer must find within his own conscience the touchstone against which to test the extent to which his actions should rise above minimum standards. But in the last analysis it is the desire for the respect and confidence of the members of his profession and the society which he serves that should provide to a lawyer the incentive for the highest possible degree of ethical conduct. The possible loss of that respect and confidence is the ultimate sanction. So long as its practitioners are guided by these principles, the law will continue to be a noble profession. This is its greatness and its strength, which permit of no compromise."

Because it is occasionally necessary to remind ourselves of the rigorous standards each of us must maintain as a member of the legal profession, Sections 3.1 and 3.2 of Rule 9 of the Rules of this Court also bear repetition:

**3.1.** The license to practice law in this State is a continuing proclamation by the Court that the holder is fit to be entrusted with professional and judicial matters, and to aid in the administration of justice as an attorney and as an officer of the Court. It is the duty of every recipient of that privilege to conduct himself at all times, both professionally and personally, in conformity with the standards imposed upon members of the bar as conditions for the privilege to practice law.

**3.2.** Acts or omissions by an attorney, individually or in concert with any other person or persons, which violate the Attorney's Oath of Office, the Code of Professional Responsibility of the State of Tennessee, or T.C.A. § 23–3–201, shall constitute misconduct and shall be grounds for discipline, whether or not the act or omission occurred in the course of an attorney-client relationship.

In *Petition for Tennessee Bar Association,* 539 S.W.2d 805 (Tenn.1976), at p. 809 Justice Harbison has traced the disciplinary rules promulgated by this Court from their origin. Rule 40 of the Court, providing for the appointment of members of the bar to investigate grievances or complaints against lawyers charged with misconduct was published at 192 Tenn. 827 and subsequently readopted as Rule 42. By order dated July 19, 1965, this Court, *acting upon a Petition of the Tennessee Bar Association,* set up commissioners for the purpose of investigating complaints of unethical conduct and professional misconduct on the part of attorneys. To implement enforcement of the standards of professional ethics and responsibility, the order of July 19, 1965 directly involved the Board of Governors of the Tennessee Bar Association and local bar associations, in the manner set out in detail in that rule. The use of investigative committee reports under Rule 42 has received express sanction by the General Assembly, now encoded in T.C.A. § 23–3–202. In 1974 Rule 42 was revised at the behest of the Tennessee Bar Association. Instead of relying upon the voluntary efforts of the Bar Association, local bar associations and individual lawyers, the Court chose a method by which the financing of grievance investigations and enforcement of profes-

sional standards would be shifted to the entire membership of the State's legal profession and upon all persons holding a license to practice law in this State, with the exceptions set out in the Rule. New rules of the Court were adopted in 1981 and Rule 42 was replaced by current Rule 9.

Although this Court exercises the role of prescribing and seeking to enforce and uphold the standards of professional responsibility in this State, *Petition of Tennessee Bar Assoc.*, supra, p. 810, the Court has extended to any member of the profession the right to file a petition, at any reasonable time, to ask the Court to reconsider or modify its actions.

The Hearing Committee as well as the trial judge in this case have indicated a need for more precise guidelines for interpreting the applicability of DR 7–107 to extrajudicial statements in criminal cases. The Hearing Committee in its findings made note of the three tests adopted severally by courts in various jurisdictions to be used in such cases, that is, whether comments of counsel posed:

(1) "[A] serious and imminent threat;" (2) "a clear and present danger;" or (3) "a reasonable likelihood," ... of interfering with the fair trial of a defendant.

We are of the opinion that the above differences are more semantical than real. We have no difficulty in finding adequate guidelines within the framework of the rule itself. Throughout the text constant reference is made to the statements a "reasonable person" might make, "reasonably likely" to interfere with a fair trial. The rule is explicit. There is no reason to complicate it by the addition of abstruse court inculcated definitions.

We have been greatly benefited in reaching the conclusions announced here by the briefs of amici curiae, National District Attorneys Association, the Tennessee District Attorneys General Conference and the Tennessee Association of Criminal Defense Lawyers. We express our appreciation for their assistance.

Respondent's challenge to the constitutionality of Disciplinary Rule 7–107 is found to be without merit. The judgment of the Chancery Court for Davidson County finding respondent to be in technical violation of Disciplinary Rule 7–107(B) and (E) and sustaining the hearing committee's verdict is affirmed by this Court. The costs of these proceedings will be paid equally by the Board of Professional Responsibility and respondent.

HARBISON, C.J., and FONES and COOPER, JJ., concur.

DROWOTA, J., concurring in part, dissenting in part.

DROWOTA, Justice, concurring and dissenting.

I concur in part and dissent in part. I agree with the majority opinion that DR 7–107 does not violate the freedom of expression rights secured by the United States and Tennessee Constitutions as applied in the present case. I disagree with the majority's finding that Respondent, John Zimmerman, was in technical violation of DR 7–107 and that "the discipline imposed [private reprimand] was adequate and appropriate." I further disagree with the majority when it states: "We are of the opinion his [Zimmerman's] comments were not very well considered and, in order to avoid the possibility of violating an accused's constitutional rights, that it would be prudent for the District Attorney to review his 'open policy with the media' in relation to the nature of the comments his staff is encouraged to communicate."

DR 7–107 is entitled "Trial Publicity." Section (A) deals with extrajudicial statements made during the investigation of a criminal matter, Section (B) deals with extrajudicial statements made prior to trial, Section (D) deals with extrajudicial statements made during trial and Section (E) deals with extrajudicial statements made after trial and prior to the imposition of sentence. In this case we deal only with Sections (B) and (E).[1] Put in its simplest

---

1.  (B) A lawyer or law firm associated with the prosecution or defense of a criminal matter

shall not, from the time of the filing of a complaint, information, or indictment, the issuance

form, the technical violation of DR 7–107(B), as found by the majority in this case, is that a lawyer associated with the prosecution of a criminal matter, prior to commencement of trial, has made an extrajudicial statement that relates to: (4) the results of examinations or the refusal or failure of the accused to submit to examinations or tests, and (6) any opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case.

The Board of Professional Responsibility filed charges against John Zimmerman, an Assistant District Attorney General in Davidson County, alleging that he made improper extrajudicial statements to the news media about two pending criminal cases, which I shall refer to as the Sheffield case and the Emmitt and Haynes case. The Sheffield case involved the murder of a quadriplegic veteran in a Nashville cemetery by Sheffield. At his preliminary hearing Sheffield's confession was introduced, where he admitted stabbing the victim, Campbell. After the preliminary hearing, Zimmerman was questioned by reporters from the *Nashville Banner* and WSM radio. TV reporters and cameramen were also present. The following article appeared in the *Nashville Banner* about the Sheffield case:

"The medical examiner said (Campbell) was strangled, stabbed in the chest multiple times and had his throat slashed all the way across," Assistant District Attorney General John Zimmerman said. "The photographs of the body were pretty bad. We're considering asking for the death penalty," Zimmerman said today.

Once at the cemetery, Sheffield allegedly stabbed the victim "multiple times in the chest and slashed his throat," Zimmerman said after Wednesday's preliminary hearing in General Sessions Court.

The following article also appeared in *The TENNESSEAN:*

Assistant Attorney General John Zimmerman said outside the courtroom that Sheffield, 19, told police he attempted to strangle Campbell, 52, but the older man "wouldn't die."

Then, according to Zimmerman, Sheffield said he stabbed Campbell "multiple times in the chest" before slashing his throat, almost from ear to ear.

With reference to the Sheffield case, the Hearing Committee found that Sheffield's confession (which was truly prejudicial) had been introduced at the preliminary hearing, therefore it was of public record and Zimmerman's comments concerning the confession were permissible. *See* DR 7–107(B)(3). The Committee, however, found Zimmerman's comments to the media concerning the examination and report of the medical examiner and photographs of the body were in violation of DR 7–107(B)(4).

I am of the opinion that Zimmerman's statements regarding the medical examiner's findings did not violate DR 7–107(B)(4). It should be pointed out that in the Sheffield case the cause of death was not a contested issue, nor was the medical examiner's description of the injuries disputed, and the medical report had no bearing on the guilt or innocence of Sheffield. The

of an arrest warrant, or arrest until the commencement of the trial or disposition without trial, make or participate in making an extrajudicial statement, that a reasonable person would expect to be disseminated by means of public communication, and that relates to:

(1) The character, reputation, or prior criminal record (including arrests, indictments, or other charges of crime) of the accused.

(2) The possibility of a plea of guilty to the offense charged or to a lesser offense.

(3) The existence or contents of any confession, admission, or statement given by the accused or his refusal or failure to make a statement.

(4) The performance or results of any examinations or tests or the refusal or failure of the accused to submit to examinations or tests.

(5) The identity, testimony, or credibility of a prospective witness.

(6) Any opinion as to the guilt or innocence of the accused, the evidence, or the merits of the case.

(E) After the completion of a trial or disposition without trial of a criminal matter and prior to the imposition of sentence, a lawyer or law firm associated with the prosecution or defense shall not make or participate in making an extrajudicial statement that a reasonable person would expect to be disseminated by public communication and that is reasonably likely to affect the imposition of sentence.

autopsy report is a public record, T.C.A. § 38–7–110(c), and therefore, an attorney may state the medical examiner's findings. DR 7–107(B)(4) deals with "results of any examinations or tests or the refusal or failure of the *accused* to submit to examinations or tests" [emphasis added]. Section (B)(4) is meant to prevent comments about tests or refusal to submit to tests by the accused, not a victim. For example, the failure of a defendant to pass or to take a polygraph test cannot be commented upon, but here we have an examination of a victim, not the defendant. With reference to Zimmerman's statement that "the photographs of the body were pretty bad," the photographs were never displayed or offered to the media by Zimmerman, and they were, therefore, not disseminated to the public. The majority opinion fails to cite what specific rule prohibits such a statement by Zimmerman and how it threatened the Defendant's fair trial.

Emmitt and Haynes were convicted in separate jury trials of assault with intent to commit first degree murder, aggravated kidnapping, aggravated rape, armed robbery, and first degree burglary. The victim was an 82–year–old senior citizen volunteer worker. Before the sentencing hearing, the following statements were attributed to Zimmerman in a local newspaper:

"I think these verdicts speak the mind of the jury for the community, in that crimes like this against the elderly are not going to be tolerated."

"... will ask Judge Sterling Gray in a sentencing hearing ... to impose the maximum sentences on both Emmitt and Haynes and to order those terms consecutive."

"This woman suffered torture at the hands of these two men for about three hours.... As far as I am concerned, there is nothing worse they could have done short of killing her."

With reference to the Emmitt and Haynes case, the Hearing Committee determined there was no violation of DR 7–107(E) because it was not reasonably likely that Zimmerman's remarks had any effect on the imposition of the sentence in the case. Judge Gray testified at the disciplinary hearing that he was unaware of any extrajudicial statements made by Zimmerman and was not influenced by anything said or done by Zimmerman outside the courtroom.

Zimmerman's statements to the press were not a staged press conference, he did not initiate the discussion, he responded only to questions propounded to him by the news media representatives outside the courtroom. The policy of the District Attorney's office was to speak openly and courteously with all members of the press consistent with the code of professional responsibility. This John Zimmerman did and he should not now be reprimanded for his actions.

The majority opinion points out that "[t]he hearing committee as well as the trial judge in this case has indicated a need for more precise guidelines for interpreting the applicability of DR 7–107 to extrajudicial statements in criminal cases." The hearing committee noted three tests or standards adopted by courts in other jurisdictions which lend guidance in applying DR 7–107. The three tests are, whether extrajudicial statements of counsel posed: (1) a serious and imminent threat to the fair trial of a defendant, *Chicago Council of Lawyers v. Bauer*, 522 F.2d 242, 249 (7th Cir.1975), *cert. den.*, 427 U.S. 912, 96 S.Ct. 3201, 49 L.Ed.2d 1204 (1976);[2] (2) a clear and present danger to the fair trial of the defendant, *Markfield v. New York*, 49 App.Div.2d 516, 370 N.Y.S.2d 82 (1975); or (3) a reasonable likelihood of interfering with the fair trial of a defendant, *Hirschkop v. Snead*, 594 F.2d 356 (4th Cir.1979). The parties and Amici have asked this Court to give them and the Bar of this State some guidance for interpreting DR 7–107's applicability to extrajudicial state-

**2.** *See, Ruggieri v. Johns–Manville Products Corp.*, 503 F.Supp. 1036 (R.I.1980); *Bernard v. Gulf Oil Co.*, 619 F.2d 459, 476–477 (5th Cir.1980) *en banc; Shadid v. Jackson*, 521 F.Supp. 85 (E.D. Tex.1981); *In re: Lasswell*, 296 Or. 121, 673 P.2d 855 (1983); *Kemner v. Monsanto Company*, 112 Ill.2d 223, 97 Ill.Dec. 454, 464, 492 N.E.2d 1327, 1337 (1986).

ments. The majority opinion responds to the request by stating: "We have no difficulty in finding adequate guidelines within the context of the rule itself." This response by the majority that "[t]he rule is explicit", begs the question. To merely say that "[t]hroughout the text constant reference is made to the statements a 'reasonable person' might make, 'reasonably likely' to interfere with a fair trial," is not an adequate response to the guidance sought by the bench and bar. The citation to a "reasonable person" found in DR 7-107, Sections (A), (B), (D), (E), (G) and (H), has nothing to do with the extrajudicial statement of counsel but refers to what "a reasonable person would expect to be disseminated by means of public communication." In this case there was an obvious expectation that Zimmerman's statements would be disseminated by means of public communication, since the media approached Zimmerman after the preliminary hearing and sought statements from him. The "reasonable person" reference in Section (B) has nothing to do with giving guidance to the bar concerning extrajudicial statements made prior to trial. The reference to "reasonably likely" in the majority opinion is not found in Section (B), therefore it is difficult to see how the rule can be said to be explicit.

The bench and bar have asked for guidance in interpreting DR 7-107's applicability to extrajudicial statements. I am of the opinion that we should adopt a standard which balances the rights of the accused to a fair trial with the right of a free press and the public's right to information and knowledge.

The majority opinion states "that it would be prudent for the District Attorney to review his 'open policy with the media' in relation to the nature of the comments his staff is encouraged to communicate." This reasoning by the majority is why I feel guidelines for DR 7-107(B) should be established by this Court. The majority opinion does what respondent seeks to avoid—a stifling of the public's right to know by creating a chilling effect on prosecutors with the suggestion to "review his 'open policy with the media'". There is a delicate balance between a prosecutor's right to speak and the right of the public and the press to have access to information, and the rights of the individual accused of a crime and a defendant's right to a fair trial. I am of the opinion that Zimmerman's statements should be reviewed by the test of "whether his comments posed a clear and present danger to the fair trial of the defendant." Under such a test, it is clear that Zimmerman's statements to the media did not pose a clear and present danger to the defendant's fair trial and he did not violate DR 7-107. I would reverse the decision of the Chancery Court recommending a private reprimand. I would dismiss the complaint filed by the Board of Professional Responsibility for I find no violation of DR 7-107.