FIRST DIVISION
March 20, 2006

No. 1-05-1895

| | | |
|---|---|---|
| TRACIE EADS, | ) | Appeal from |
| | ) | the Circuit Court |
| Plaintiff-Appellee, | ) | of Cook County |
| | ) | |
| v. | ) | 01-L-0093 |
| | ) | |
| CONSOLIDATED RAIL CORPORATION, | ) | Honorable |
| | ) | Michael J. Hogan, |
| Defendant-Appellant. | ) | Judge Presiding |

JUSTICE McBRIDE delivered the opinion of the court:

In this permissive interlocutory appeal pursuant to Supreme Court Rule 306, the

defendant, Consolidated Rail Corporation (Conrail), a Pennsylvania corporation, contends it was

an abuse of discretion for the circuit court of Cook County to deny its motion to dismiss the

Indiana plaintiff's negligence action on the basis of *forum non conveniens* before a retrial on the

action commences in this jurisdiction.  166 Ill. 2d R. 306.

The accident at issue occurred in Indiana at approximately 3:37 p.m. on Saturday,

September 20, 1997, when plaintiff Tracie D. Eads was riding in the front passenger seat of a

1989 Chevrolet Astro Van being driven by her friend, Donald L. Steiner.  Like Eads, Steiner

resided in Goshen, Elkhart County, Indiana.  Steiner drove the van south on a two-lane, unpaved,

gravel road, Elkhart County Road 31, to its juncture with train tracks owned and maintained by

Conrail, approximately one-half mile north of Elkhart County Road 38.  The rural, grade-level

crossing was flanked by soybean fields and woods, and equipped with advance warning signs,

crossbuck signs, and stop signs, but not automatic gates or flashing lights.  There was conflicting

witness testimony as to whether Steiner heeded the stop sign before driving into the path of an

eastbound Conrail freight train. The train was approximately 100 miles from Chicago, returning to Toledo, Ohio, and its crew consisted of engineer Michael J. Schmidt, who resided in Sylvania, Ohio, and conductor Daniel R. Bailey, who resided in Wayne, Ohio. When the freight train struck Eads' side of the van, she and Steiner were ejected from the vehicle. Ronald G. Denning was mowing a field near the crossing and Kendall Toole was busy working on a nearby home, and they hurried to the scene of the collision. The collision was investigated by deputies Michael Carich, Brian Holloman, and Deb Fulk, of the Elkhart County, Indiana, sheriff's department. Steiner died at the scene and Eads was transported to Goshen General Hospital, in Goshen, Elkhart County, Indiana, and then Parkview Trauma, in Fort Wayne, Indiana, for treatment of her injuries. All of Eads' medical care was provided in Indiana. Her primary treating physician was Dr. Stephen Ribaudo, a physiatrist, whose office was in South Bend, Indiana. She was also treated by neurosurgeon, Dr. Stephen Schroeder, of Fort Wayne, Indiana, Dr. Donald Graber, of Elkhart, Indiana, Dr. Mohammed Zeitoun, of Merrillville, Indiana, and Behavioral Psychological Family Services, of South Bend, Indiana. Eads has remained a resident of Elkhart County throughout these proceedings.

Eads filed a negligence action against Steiner's estate in Elkhart County on February 27, 1998, and then a separate negligence action in Madison County, Illinois, on August 20, 1998, against Conrail and two of its employees. In the Indiana action, Eads alleged Steiner's negligence was the sole cause of her injuries. In the Illinois action, Eads did not allege any negligence on the part of Steiner, train engineer Schmidt, conductor Bailey, or Schmidt and Bailey's direct supervisors who were located in Elkhart County, Indiana, and Dearborn,

2

Michigan. She did, however, name as defendants two Conrail employees who worked in Cook County, Milt Leppert and George Marx, and alleged these individuals negligently failed to properly train and supervise the train crew, negligently failed to evaluate the need for and order the installation of gates and lights at the crossing, and also negligently failed to order a speed reduction at the crossing.

On October 13, 1998, Conrail filed a notice of removal to the federal District Court for the Southern District of Illinois on the basis of diverse citizenship and an amount in controversy exceeding $75,000. See 28 U.S.C. c 1332 (2000). Conrail argued diversity existed because it was a resident of Pennsylvania and Eads was a resident of Indiana, and that Marx and Leppert's Illinois residency should be disregarded because Eads had fraudulently joined the Cook County personnel as defendants solely for the purposes of jurisdiction. Conrail provided affidavits from Marx and Leppert indicating they had no direct supervisory authority over the crew. Eads, however, sought and obtained leave to add another defendant, Conrail employee John Ryan, an "Assistant Vice President of Operating Rules" working in Cook County, and then motioned to remand the case back to Madison County. Eads' motion was granted on December 15, 1998.

On January 13, 1999, Conrail filed what would be the first of four written or oral motions in the Illinois state courts that was based on the equitable doctrine of *forum non conveniens*. In this first motion, Conrail asked Madison County to dismiss Eads' action so that it could be refiled in Indiana, because her residence, the accident site, most of the post-occurrence witnesses and all of the medical witnesses were in Indiana. Conrail argued that when Eads rejected her home county and home state, and filed her action in a jurisdiction that had no interest in its outcome,

3

Eads demonstrated she was forum shopping. As an alternative, Conrail asked Madison County to transfer the case to Cook County because Madison County had a congested docket and no arguable connection to the litigation, and the three individual defendants at least worked in Cook County. Nearly two years later, on November 29, 2000, Madison County granted Conrail's alternative request to transfer the case to Cook County. In the meantime, the parties had proceeded with discovery.

On June 18, 2002, Conrail filed its second *forum non conveniens* motion, which was based on its recent discovery of the negligence action that was pending in Indiana against Steiner's estate. The grant or denial of a *forum non conveniens* motion is a discretionary ruling (*Ferguson v. Bill Berger Associates, Inc.*, 302 Ill. App. 3d 61, 70, 704 N.E.2d 830, 836 (1998)), and ordinarily, once a judge has made a discretionary ruling, the ruling will not be disturbed by a judge of coordinate jurisdiction unless there is a change of circumstances or additional facts which warrant such action. *W.R. Grace & Co. v. Beker Industries, Inc.*, 128 Ill. App. 3d 215, 221, 470 N.E.2d 577, 583 (1984) (indicating a "change in circumstances of the parties relating to *forum non conveniens* principles" justifies renewal of a challenge to forum). Conrail argued Eads' choice of forum demonstrated that even she believed Indiana was the appropriate forum to redress her personal injuries, and that the imposition of sanctions pursuant to Supreme Court Rule 137 was warranted because Eads had been concealing the existence of her Indiana suit. 155 Ill. 2d. R. 137. The circuit court's March 28, 2003, order denying Conrail's motion does not specify the court's reasoning; however, the hearing transcript discloses that the Cook County judge was "concern[ed]" that the Madison County judge had already determined there were

4

sufficient contacts with Illinois to keep the case in Illinois, and that the only new development was the discovery of Eads' suit against Steiner, which the court did not believe had been wilfully concealed from Conrail.

On January 9, 2004, Eads' Illinois action against Conrail and its Cook County personnel proceeded to trial before Cook County circuit court judge James M. Varga. Judge Varga first conducted approximately five full days of proceedings in his chambers addressing the parties' motions *in limine* and determined that the law of Indiana (the site of the accident) would control what was presented to the jury and the substance of the jury instructions. On January 21, 2004, after all the pretrial motions had been resolved and it was time to select a jury, Eads orally dismissed the three individual defendants from the case. Conrail immediately renewed its *forum non conveniens* motion, characterized Eads' inclusion of the individual defendants as a "sham" and a "ruse" and stated that dismissing them at the last possible opportunity made it "crystal clear [they were] kept in the case solely to keep the case in Cook County and Illinois [when it] should be tried in Indiana [along with the claim against Steiner's estate]." Eads countered that she had a "good faith basis" for bringing negligent supervision claims against the Illinois employees in Illinois, that her reason for dismissing them was privileged, and that she had "expended the resources to be here" and was "ready for trial today." Judge Varga acknowledged that Conrail had repeatedly challenged whether it was appropriate for Eads to litigate her damages in Illinois state court. He indicated he was denying Conrail's third *forum non conveniens* motion, however, since Cook County taxpayers had already "invested so much [judicial] time and effort and resources" over the preceding three years or so, and the litigants

5

were indicating they needed just five days with a jury to conclude the case. "[T]he bottom line," he concluded, "is, just finish it."

At trial, Eads relied on the testimony of eight individuals, including herself, to prove her case. Denning was the neighbor who left the field he was mowing to come to the scene of the accident. Denning was in the process of moving to Michigan when the accident occurred in 1997, and he traveled from his home in Edwardsburg, Michigan, to testify at the Cook County trial in January 2004. The jury also heard from Schmidt, of Ohio, who was the train's engineer, and Rory Cauffman, of Osceola, Indiana, who was the Conrail senior claims agent who investigated the accident. Dr. William Berg, an engineer, came from Madison, Wisconsin, to testify for Eads as an expert witness. The jury viewed the videotaped depositions of Eads' physiatrist Ribaudo and neurosurgeon Schroeder, who practiced medicine in South Bend and Fort Wayne, Indiana, respectively, and Steven Hull, an engineering services manager with the Indiana Department of Transportation (INDOT), living in Indianapolis, Indiana. Eads also testified, and, as noted above, Eads was and is a resident of Elkhart County.

Conrail's eight witnesses included Toole, of Elkhart County, Indiana, who was working on a home near the railroad crossing and came to the accident scene shortly after Denning. Toole, however, did not travel from Indiana to the Illinois courtroom; his deposition testimony, which the parties had stipulated would be admissible at trial, was read to the jury. The testimony of sheriff's deputy Holloman of Elkhart County, Indiana, and of neurologist Marc A. Levin, of Munster, Indiana, who performed an "independent medical examination," was conveyed to the jury by videotape. Conrail also called train conductor Bailey of Ohio, Conrail employee Lyle

Dohse of Elkhart, Indiana, retired Conrail employee Richard Cantwell of Jacksonville, Florida, Raymond Brach, a traffic engineer residing in South Bend, Indiana, and Bernard Morris, a rail safety expert, who traveled from Springfield, Illinois.

Although Eads told the jury her damages exceeded $7 million and the jury decided the case in her favor, it awarded Eads only $2,500. The jury rejected her claims for disfigurement, loss of a normal life, pain and suffering, and emotional distress, but determined Eads incurred $107,000 in medical expenses and suffered lost wages totaling $143,000. In accordance with Indiana law, the jury reduced Eads' damages to $2,500, after finding she was not contributorily negligent, but that 99% of the negligence was attributable to Steiner and 1% of the negligence was attributable to Conrail.

Judge Varga granted Eads' subsequent motion for a new trial on all issues. The hearing transcript suggests the judge focused on the fact that the jury's decision to award medical expenses, which included pain management and mental health care, was inconsistent with the jury's rejection of any damages for pain and suffering, and emotional damages.

Next, Conrail filed its fourth motion to dismiss on the grounds of *forum non conveniens*, which is the motion at issue in this appeal. On June 6, 2005, a different judge of the circuit court, Michael J. Hogan, denied Conrail's renewed motion after finding that the reasons Judge Varga cited for denying Conrail's oral motion to dismiss the case while midway through the trial still existed. Judge Hogan specified that there was "no new matter or new [case] law" warranting a different result. Eads' case has not been given a new trial date and will remain on the Cook County circuit court's appellate stay calendar pending the conclusion of this appeal from Judge

Hogan's ruling.

As noted above, a circuit court judge has broad discretion to grant or deny a motion to dismiss on the grounds of *forum non conveniens*. *Ferguson*, 302 Ill. App. 3d at 70, 704 N.E.2d at 836 (Rule 306 interlocutory appeal determining that *forum non conveniens* did not require transferring Illinois plaintiff's declaratory judgment action about literary agency agreement to New York). Our role on appeal is to determine whether the circuit court abused its discretion, which occurs when no reasonable person would share the court's view. *Ferguson*, 302 Ill. App. 3d at 70, 704 N.E.2d at 836.

*Forum non conveniens* is an equitable doctrine "founded in considerations of fundamental fairness and sensible and effective judicial administration." *Adkins v. Chicago, Rock Island & Pacific R.R. Co.*, 54 Ill. 2d 511, 514, 301 N.E.2d 729, 730 (1973). A *forum non conveniens* argument asks the court to consider private interest factors affecting the convenience of the litigants and public interest factors affecting the administration of the courts (*Ferguson*, 302 Ill. App. 3d at 70, 704 N.E.2d at 837), and allows the court to decline jurisdiction "whenever it appears that there is another forum that can better 'serve the convenience of the parties and the ends of justice.' " *Adkins*, 54 Ill. 2d at 514, 301 N.E.2d at 730, quoting *Lonergan v. Crucible Steel Co. of America*, 37 Ill. 2d 599, 606, 229 N.E.2d 536, 539 (1967).

The doctrine of *forum non conveniens* is equally applicable in an interstate or an intrastate context. *Lambert v. Goodyear Tire & Rubber Co.*, 332 Ill. App. 3d 373, 378, 773 N.E.2d 133, 137 (2002). When addressing an interstate *forum non conveniens* argument, the court focuses on whether Illinois is the appropriate state in which to litigate the controversy.

*Lambert*, 332 Ill. App. 3d at 377-78, 773 N.E.2d at 137 (finding trial court erroneously denied interstate *forum non conveniens* motion when Michigan had far greater interest than Illinois in adjudicating claim regarding accident that occurred in Michigan, killed a Michigan resident, and plaintiff widow was a Michigan resident).  When addressing an intrastate *forum non conveniens* argument, the court focuses on whether the case is being litigated in the most convenient county within the state of Illinois.  *Lambert*, 332 Ill. App. 3d at 378, 773 N.E.2d at 137; *see e.g.*, *First American Bank v. Guerine*, 198 Ill. 2d 511, 526, 764 N.E.2d 54, 64 (2002) (finding trial court erroneously granted intrastate *forum non conveniens* motion because potential trial witnesses were scattered among Cook County, DeKalb County, and Kane County, Illinois, and no single Illinois county had a "predominant connection to the litigation").

Also pertinent here is that when a plaintiff pursues a foreign forum despite a motion to dismiss, the plaintiff is taking on a calculated risk of reversal on appeal -- *forum non conveniens* motions have been granted by reviewing courts even after claims have been tried to verdict. *Lowe v. Norfolk & Western Ry. Co.*, 124 Ill. App. 3d 80, 86, 463 N.E.2d 792, 798 (1984).  In *Lowe*, for instance, 47 railroad employee cases were consolidated and tried to a judgment of nearly $58 million in Madison County, Illinois.  *Lowe*, 124 Ill. App. 3d at 85, 463 N.E.2d at 796-97.  Despite the advanced state of the litigation, the appellate court found the denial of the defendants' *forum* motions was reversible error and directed the circuit court to dismiss the cause so that the plaintiffs, who were exposed to leaking chemical cargo while working in a Missouri rail yard, could refile in central Missouri.  *Lowe*, 124 Ill. App. 3d at 90, 463 N.E.2d at 800-01. *Adkins* is another instance in which a reviewing court determined after a jury trial that Illinois

was not the appropriate forum to adjudicate a foreign plaintiff's tort claim. *Adkins*, 54 Ill. 2d 511, 301 N.E.2d 729. Adkins was a Michigan resident; her suit arose from a fatal truck-train collision at a grade-level crossing in Iowa; the defendant railroad was doing business in Iowa, Illinois and other states; and Adkins also named as defendants two railroad employees residing in Illinois. *Adkins*, 54 Ill. 2d at 513-14, 301 N.E.2d at 730-31. The supreme court reversed the jury's verdict for plaintiff Adkins and directed the Rock Island County circuit court to grant the railroad's *forum non conveniens* motion. *Adkins*, 54 Ill. 2d at 514, 301 N.E.2d at 730. Thus, the fact that Eads' suit against Conrail has been proceeding in the Illinois state courts for a number of years, or the fact that it has proceeded past discovery, motion practice, and the various stages of a jury trial has no bearing on our analysis of whether there is "another forum that can better 'serve the convenience of the parties and the ends of justice.' " *Adkins*, 54 Ill. 2d at 514, 301 N.E.2d at 730, quoting *Lonergan v. Crucible Steel Co. of America*, 37 Ill. 2d 599, 606, 229 N.E.2d 536, 539 (1967).

The public interest factors that are relevant in a *forum non conveniens* analysis include the administrative difficulties which result "when litigation is piled up in congested centers instead of being handled at its origin," "a local interest in having localized controversies decided at home," and that it is unfair to burden citizens in an unrelated forum with jury duty. *McClain v. Illinois Central Gulf R.R. Co*., 121 Ill. 2d 278, 520 N.E.2d 368 (1988) (holding that tort claims resulting from truck-train collision in Tennessee should be litigated in Tennessee, even though truck driver began seeing Illinois doctors and moved to Illinois after action was commenced); see also *Ferguson*, 302 Ill. App. 3d at 70-71, 704 N.E.2d at 837.

10

An additional public interest factor is the appropriateness of having the case heard in a forum familiar with the state law that governs the case. *Ferguson*, 302 Ill. App. 3d at 71, 704 N.E.2d at 837, citing *Simantz v. Prime Motor Inns, Inc.*, 213 Ill. App. 3d 813, 573 N.E.2d 234 (1991). "The need to apply the law of a foreign jurisdiction has been considered a significant factor favoring dismissal of a suit on grounds of *forum non conveniens*." *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 80, 457 N.E.2d 417, 420 (1983). "Illinois courts can apply the law of a foreign State in appropriate circumstances, although they should not be burdened with doing so unless there are strong policy reasons and Illinois has a strong connection with the case." *Simantz*, 213 Ill. App. 3d at 816, 573 N.E.2d at 236.

Relevant private interest factors include "accessibility of sources of proof, availability of witnesses, availability of compulsory service of process to compel the appearance of unwilling witnesses, costs of obtaining witnesses, viewing the premises in question, if appropriate, convenience of the parties, and ' "all other practical problems that make trial of a case easy, expeditious and inexpensive." ' " *Ferguson*, 302 Ill. App. 3d at 70, 704 N.E.2d at 837, quoting *Trent v. Caterpillar, Inc.*, 234 Ill. App. 3d 839, 842-43, 599 N.E.2d 1145, 1147 (1992), quoting Gulf Oil Co. v. Gilbert, 330 U.S. 501, 508, 91 L. Ed. 1053, 1062, 67 S. Ct. 839, 843 (1947).

Also relevant to the analysis is the plaintiff's choice of forum. " 'A plaintiff is given the right to select the forum, and unless the public and private interest factors strongly weigh in favor of transfer, a plaintiff's choice of forum will rarely be disturbed.' " *Ferguson*, 302 Ill. App. 3d at 71, 704 N.E.2d at 837, quoting *Kwasniewski v. Schaid*, 153 Ill. 2d 550, 553, 607 N.E.2d 214, 216 (1992). "If the chosen forum is the plaintiff's home, a court may reasonably assume

11

that the choice is convenient [citation]; both private and public interests tend to weigh in the plaintiff's favor when he chooses to sue at home." *McClain*, 121 Ill. 2d at 289-90, 520 N.E.2d at 373. However, "if the plaintiff does not live in the forum when the cause of action arises or when the suit is filed *** the action is less a localized controversy, and those reasonable assumptions about the convenience of the parties and the ends of justice are subject to closer scrutiny." *McClain*, 121 Ill. 2d at 290, 520 N.E.2d at 373. "[E]ven when the plaintiff's forum choice is entitled to less deference [because she or he is not a resident of the forum], the test remains whether the relevant factors, viewed in their totality, strongly favor transfer to the forum suggested by the defendant." *Ferguson*, 302 Ill. App. 3d at 71, 704 N.E.2d at 837.

Before analyzing the facts of the case in light of these principles, we must address Eads' preliminary arguments. Eads contends Illinois requires a defendant to demonstrate that "new matter, new parties, or new causes of action or theories [have been] brought forth in an amended complaint" (*Ellis v. AAR Parts Trading, Inc.*, 357 Ill. App. 3d 723, 738, 828 N.E.2d 726, 739 (2005)), in order to bring a new challenge to forum. Eads points out that she last amended her complaint in December 2003, which was before Judge Varga denied Conrail's third *forum* motion during the trial conducted in January 2004. Eads argues that because there was no subsequent "new matter, new parties or new causes of action or theories *** brought forth in an amended complaint," Judge Hogan properly denied Conrail's fourth *forum* motion in June 2005 and should be affirmed on appeal. She also characterizes Conrail's fourth *forum* motion as "absurd" and "tenuous" at best, and states there "has been absolutely no change in the case at issue" justifying Conrail's latest motion.

12

We are not persuaded by Eads' argument because it is a misstatement of the law of this jurisdiction and a mischaracterization of the pertinent facts. The quote from *Ellis* which Eads relies upon concerns the specific facts of that proceeding, and it was not a general pronouncement about Illinois law. *Ellis*, 357 Ill. App. 3d at 738, 828 N.E.2d at 739. *Ellis* indicated it was relying in part on *Kemner v. Monsanto Co.*, 112 Ill. 2d 223, 492 N.E.2d 1327 (1986), in which the Illinois Supreme Court determined the defendant chemical company had a right to renew a *forum non conveniens* motion where new facts and case law were revealed subsequent to the filing of its initial motion. The new facts presented by the defendant's second *forum* motion came to light through discovery (*Kemner*, 112 Ill. 2d at 230, 492 N.E.2d at 1330), and there is no indication in *Kemner* that the supreme court intended to limit Illinois defendants to a single *forum non conveniens* motion unless the plaintiff amends her complaint. *Ellis* also indicated it was relying in part on *McClain*, in which the Illinois Supreme Court determined the circuit court had not merely reconsidered prior motions and orders when it adjudicated the defendant's fifth forum challenge, because newly discovered circumstances affecting the court's *forum* analysis had been brought to its attention. *McClain*, 121 Ill. 2d at 286, 520 N.E.2d at 371. The defendant's written motion informed the judge there were two additional witnesses who were residents of Tennessee. *McClain*, 121 Ill. 2d at 284, 520 N.E.2d at 370. Before the judge ruled on the motion, two other "new matters" were disclosed, specifically, that an Illinois judge had declined to exercise jurisdiction over a related indemnification action and that there was new case law involving substantially similar facts. *McClain*, 121 Ill. 2d at 286, 520 N.E.2d at 371. Thus, Illinois law provides that a challenge to forum may be renewed where the circumstances

13

affecting any of the *forum non conveniens* factors have changed, including where "new matter," such as additional facts or new law which alters the analysis, becomes available. Eads has misstated the law of this jurisdiction by taking the language of *Ellis* out of context. Our second reason for rejecting Eads' argument is that there was a substantial change in the circumstances relevant to a *forum non conveniens* analysis between the presentment of Conrail's third and fourth *forum* motions to Judges Varga and Hogan, respectively. Specifically, Judge Varga was in the middle of a complex trial which initially involved Conrail and three Illinois defendants when he heard the third motion to dismiss; however, that proceeding concluded and a new trial without the Illinois defendants was ordered by the time Eads and Conrail appeared before Judge Hogan on the fourth motion to dismiss. The dismissal of Conrail's three Cook County employees from Eads' action, the conclusion of the first trial, and the order granting a new trial that will not include the individual defendants, created a different set of circumstances or "new matter" that justified Conrail's renewal of its challenge to forum before Judge Hogan. By the time the parties appeared before Judge Hogan, the circumstances that weighed so heavily in Judge Varga's decision no longer existed. The parties were no longer in the midst of complex proceedings involving numerous pre-trial rulings and were no longer just days away from concluding years of litigation in this jurisdiction. Instead, the parties had come almost full circle and were poised at the beginning of entirely new proceedings involving a different set of parties. The new set of circumstances warranted the court's renewed consideration of whether Illinois was an appropriate place to adjudicate Eads' claim.

Eads is also arguing that Conrail's repeated *forum* motions and this appeal defy "common

sense," because the lawsuit was transferred from Madison County, Illinois, to Cook County, Illinois, at Conrail's request. Eads contends that because Conrail chose the current forum, the equities weigh strongly in her favor and should persuade us to reject Conrail's appeal. We are not persuaded by this additional argument because the gist of Conrail's first *forum non conveniens* motion was to dismiss Eads' Illinois action so that it could be refiled in Indiana, where the plaintiff resided, where the accident at issue occurred, and where most of the relevant evidence was located. Conrail only asked in the alternative to be transferred to Cook County, due to the congestion of the Madison County court system, its lack of any known connection to the litigation, and the fact that to some extent Cook County had a connection to the litigation because, at the time, three individuals working in Cook County had been named as defendants. The fact that it took nearly two years for the motion to be heard in Madison County and that the request was granted are indications to us that Madison County's system was truly more congested than Cook County's. See also *Bland v. Norfolk & Western Ry. Co.*, 116 Ill. 2d 217, 242, 506 N.E.2d 12911, 1297 (1987) (in which supreme court indicated it "has previously taken notice of the congested dockets of the court of Madison County and has recognized that the congestion is aggravated by the presence of cases *** that have little or no connection with Madison County"). Furthermore, the fact that Conrail's first state court *forum* motion was somewhat successful is not dispositive here, since we must consider all of the relevant public and private interest factors in order to determine whether the equities weighed in Eads' or in Conrail's favor by the time they appeared before Judge Hogan on the fourth *forum* motion.

We first find that Eads' forum choice is entitled to little deference because she was not a resident of Illinois when she filed suit and she has not been a resident of Illinois during any of the proceedings. *McClain*, 121 Ill. 2d at 290, 520 N.E.2d at 373. We also find that the situs of the accident and consequential need to apply Indiana law weigh significantly in favor of dismissing her suit from this jurisdiction. *McClain*, 121 Ill. 2d at 291, 520 N.E.2d at 373-74. The State of Indiana has an interest in applying its law in its own courts, and Illinois courts have a corresponding interest in not being burdened with applying the law of another jurisdiction. *McClain*, 121 Ill 2d at 291-92, 520 N.E.2d at 373-74; see also *Moore v. Chicago & North Western Transportation Co.*, 99 Ill. 2d 73, 80, 457 N.E.2d 417, 420 (1983) (and cases cited therein) (indicating the need to apply foreign law is a significant factor favoring dismissal). In addition, the people of Elkhart County, Indiana, have a strong interest in seeing Eads' action tried in their community and in redressing Conrail's alleged lack of due care with respect to the conditions of a train crossing in their community; and there is no reason to burden the constituents of Cook County, Illinois, with jury duty when they have no connection to the parties' dispute and no interest in its outcome. *McClain*, 121 Ill. 2d at 291-92, 520 N.E.2d at 291. Although Eads now places great emphasis on the fact that the freight train originated in Chicago, Cook County, Illinois, we have disregarded this detail since Eads did not allege any tortious conduct occurred in Illinois and "merely conducting business in [Cook] County does not affect the *forum non conveniens* issue." *Boner v. Peabody Coal Co.,* 142 Ill. 2d 523, 568 N.E.2d 883 (1991); *Vinson v. Allstate*, 144 Ill. 2d 306, 311, 579 N.E.2d 857, 860 (1991). A "court clearly abuse[s] its discretion when it weigh[s] this [detail] in conjunction with the other

[relevant] private and public interest factors." *Vinson*, 144 Ill. 2d at 312, 579 N.E.2d at 860. Thus, we find that all of the relevant public interest factors strongly weigh in favor of dismissing Eads' action from Illinois.

The relevant private interest factors also strongly weigh in favor of dismissing Eads' action from Illinois. Turning first to the "accessibility of sources of proof" (*Ferguson*, 302 Ill. App. 3d at 70, 704 N.E.2d 837), we note that all of Eads' initial and rehabilitative medical care was provided in Indiana and that investigations were conducted by Indiana law enforcement and a Conrail senior claims agent situated in Indiana. Therefore, it appears that all the relevant written documents are in Indiana.

Most of the corresponding witnesses are in Indiana, not Illinois, or are in closer physical proximity to Indiana than Illinois, and, therefore, would be less inconvenienced if trial took place in Indiana. *Ferguson*, 302 Ill. App. 3d at 70, 704 N.E.2d at 837. The relevant potential witnesses in Indiana include Eads (Goshen), neighbor Toole (Goshen), investigating Elkhart County sheriff's deputies Carich, Holloman, and Fulk (Goshen), Conrail senior claims agent Cauffman (Osceola), treating physiatrist Ribaudo (South Bend), treating neurosurgeon Schroeder (Fort Wayne), INDOT employee Hull (Indianapolis), and traffic engineer Brach (South Bend). Conrail affirmatively states that it was prejudiced at the first trial by its inability to elicit live testimony from some witnesses, including members of the Elkhart County sheriff's department, and neighbor Toole, whose deposition testimony was read to the jury. In addition, most of the other relevant witnesses would have to travel through Indiana to attend trial in Illinois, including neighbor Denning, who moved to Edwardsburg, Michigan, after the collision, train engineer

Schmidt, of Ohio, train conductor Bailey, of Ohio, and retired Conrail assistant chief engineer

Cantwell, of Florida. We have given minimal weight to the location of the expert witnesses the

parties had the discretion of choosing, including Eads' expert engineer Berg, of Madison,

Wisconsin; Conrail's rail safety expert Morris, of Springfield, Illinois; and the "independent

medical examiner" chosen by Conrail, neurologist Levin, of Munster, Indiana, since those expert

witnesses would be compensated for any inconvenience with regard to travel. *Ferguso*n, 302 Ill.

App. 3d at 73, 704 N.E.2d at 838 (the location of expert witnesses is "of minimal weight");

*Griffith v. Mitsubishi Aircraft International, Inc.*, 136 Ill. 2d 101, 112, 554 N.E.2d 209, 214

(1990) ("[t]he location of expert witnesses should not be accorded undue weight in [a] *forum non*

*conveniens* analysis; otherwise parties to a lawsuit could easily frustrate the doctrine through the

selection of their expert witnesses"); *Hulsey v. Scheidt*, 258 Ill. App. 3d 567, 577, 630 N.E.2d

905, 912 (1994) ("a compensated expert would be more inclined to testify wherever instructed").

 Eads' argument that "the witnesses and parties are scattered among several counties [in various

states] *** and no single county enjoys a predominant connection to the litigation" is misplaced

because specific counties are relevant in an intrastate *forum non conveniens* analysis, but are not

relevant in an interstate *forum non conveniens* analysis such as this one. See *Lambert*, 332 Ill.

App. 3d at 378, 773 N.E.2d at 127 (whether Michigan or Illinois was the convenient forum);

*Guerine*, 198 Ill. 2d 511, 764 N.E.2d 54 (whether Cook County or Kane County, Illinois was the

convenient forum). In short, the availability of witnesses in Indiana weighs in favor of that

forum.

We have disregarded the jury's potential need to view the accident scene, because neither

18

party is arguing a jury visit is appropriate (*Ferguson*, 302 Ill. App. 3d at 70, 704 N.E.2d at 837), and the record suggests the train crossing now looks significantly different because the county road was paved and additional warning devices were installed after government funding was made available.

Finally, with respect to any "practical problems" that make trying a case "easy, expeditious and inexpensive" (*Ferguson*, 302 Ill. App. 3d at 70, 704 N.E.2d at 837), Eads unconvincingly argues that trying the case in Indiana would be more expensive than retrying the case in Illinois because "both parties would have start the discovery process from scratch."  She does not cite any authority indicating the parties' prior expenditures in this jurisdiction are relevant to a *forum non conveniens* analysis.  Furthermore, in *Lowe* and *Adkins* (cited above for the proposition that Illinois will order the dismissal of an action even after it has been fully tried), the courts considered the established public and private interest factors and expressed no concern over the additional apparent fact that the plaintiffs invested years of effort and considerable expense litigating in Illinois.  See *Lowe*, 124 Ill. App. 3d at 86, 463 N.E.2d at 798; *Adkins*, 54 Ill. 2d at 514, 301 N.E.2d at 730.  Taking Eads' prior expenses into account would create an incentive for forum-shopping foreign plaintiffs to file suit and quickly incur litigation expenses in this jurisdiction in order to ward off forum challenges.  In addition, we see no need to repeat all the prior discovery, and while some updating is probably necessary, this would be true even if retrial occurred in Illinois.  We are persuaded by Conrail's assertion that a new trial can be conducted inexpensively and expeditiously in Elkhart County, Indiana, because Conrail has agreed that a new trial can proceed there without additional discovery and that all evidence

deposition transcripts used at the first trial may be used during a second trial in Elkhart County. Eads also states that Illinois Supreme Court Rule 237(b) (166 Ill. 2d R. 237(b)) allowed her to subpoena Conrail employees to the first trial and that since no such rule exists in Indiana, she "would be forced to conduct costly video-depositions of those witnesses she previously called live at trial in lieu of calling them in person." We are not persuaded by this assertion since the only non-Indiana witnesses Eads called to prove her case the first time around were the train engineer who traveled from Ohio and the former neighbor who traveled from Michigan, and, as noted above, those states are closer to Indiana than Illinois.

After considering the parties' arguments and the relevant public and private interest factors, we conclude that there is no connection between Illinois and Eads' pending tort claim against Conrail and that the totality of circumstances strongly favors Indiana instead of Illinois as the appropriate forum to resolve the claim. We find, accordingly, that the circuit court's denial of Conrail's fourth motion to dismiss on *forum non conveniens* grounds was an abuse of discretion. The ruling at issue is reversed and the cause is remanded with directions to the circuit court to grant Conrail's motion to dismiss Eads' action. Pursuant to Supreme Court Rule 187(c)(2), the trial court's dismissal order is contingent upon Conrail agreeing to waive the statute of limitations as a defense and agreeing to accept service of process in Indiana. 134 Ill. 2d R. 187(c)(2).

Reversed and remanded with directions.

CAHILL, P.J. and GORDON, J., concur.

1-05-1895